59 A.3d 531

Ronald L. POWELL, et al.

v.

Jeffrey BRESLIN, et al.

No. 11, Sept. Term, 2012.

Court of Appeals of Maryland.

Jan. 18, 2013.

David M. Kopstein (Kopstein & Associates, LLC, Seabrook, MD; Jay D. Miller of Miller, Murtha & Psoras, LLC, Lutherville, MD), on brief, for appellants.

Edwin L. Keating, III (E. Philip Franke and Siobhan R. Keenan of Baxter, Baker, Sidle, Conn & Jones, P.A., Baltimore, MD), on brief, for appellees.

Michael J. Winkelman, Esq., McCarthy, Winkelman & Morrow, LLP, Bowie, MD, for amicus curiae brief of Maryland Association for Justice.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

HARRELL, J.

This case has a lot of moving parts. This is the second time it has reached this Court, without reaching the merits of its underlying medical malpractice claims.

## I. FACTS AND PROCEDURAL HISTORY

While under the care of Dr. Jeffrey R. Breslin (employed by Drs. Kremen, Breslin & Fraiman, P.A.), Jackie D. Powell, the decedent and father of Ronald L. Powell,[1] was injured allegedly in 2002 while at Good Samaritan Hospital in Baltimore. The asserted cause of the injury and ultimate death in 2004 of Mr. Powell was medical negligence and lack of informed consent in the administration by Dr. Breslin (and others) of epidural anesthesia.

---

**1.** Jackie D. Powell will be referred to as "Mr. Powell" throughout this opinion. Ronald L. Powell was joined in initiating this litigation by Mr. Powell's other children, Brian Powell and Lisa L. Powell. For simplicity, we shall refer to them collectively, but in the singular, as "Powell" or Appellant, depending on context.

Powell filed on 30 July 2004 a Statement of Claim (commencing what we refer to as *Powell I* ) with the Maryland Health Care Alternative Dispute Resolution Office ("HCADRO"), together with a Certificate of Qualified Expert and Report ("Certificate"), pursuant to Md.Code (1974, 2006 Repl. Vol.2010 Supp.), Courts and Judicial Proceedings Article ("CJP") § 3–2A–04(b),[2] and served notice of intent to waive arbitration. The original Statement of Claim named as defendants a Dr. Wolf, Hunt Valley Anesthesia Associates, P.A., and Good Samaritan Hospital. Powell amended his claim twice: once later in 2004 to add two negligence counts against Good Samaritan, and a second time, in 2005, to name Dr. Breslin and his professional association, Drs. Kremen, Breslin & Fraiman, P.A. (Dr. Breslin and the P.A. shall be referred to sometimes as Appellees hereafter), as additional defendants. Along with the second amended claim, Powell filed another Certificate and a supporting report by Dr. Ronald E. Burt, a board certified anesthesiologist. In view of the notice of intention to waive arbitration before the HCADRO, jurisdiction over the second amended claim was transferred to the Circuit Court for Baltimore City on 8 August 2005.

A deposition of Dr. Burt revealed that he was unable to attest to the applicable standard of care for vascular surgeons, such as Dr. Breslin, because he lacked any clinical, academic, or expert experience in vascular surgery. Because Dr. Burt was Appellant's only standard of care expert witness on this point, Appellees moved for summary judgment. After a hearing on the motion, Judge Kaye Allison of the Circuit Court issued a Memorandum Opinion and Order granting summary judgment to Appellees on 24 January 2007.[3] After the claims

---

2. Maryland requires a certificate of a qualified expert to be filed with a medical malpractice claim. CJP § 3–2A–04(b). We shall use "Certificate" here for the sake of simplicity.

3. Judge Allison found that the Certificate was insufficient because Dr. Burt was not qualified to attest to the ability of a vascular surgeon to detect an epidural hematoma and, therefore, was not qualified to attest to the standard of care of a vascular surgeon, or the alleged breach thereof.

against Dr. Wolf and Hunt Valley Anesthesia Associates, P.A., were resolved through settlement and they were dismissed from the case, Powell appealed the grant of summary judgment in favor of Appellees to the Court of Special Appeals on 27 March 2009. The intermediate appellate court held that, when a Certificate is insufficient as a matter of law under CJP § 3–2A–04(b) because it was signed by an expert who was not qualified to attest to the standard of care required by CJP § 3–2A–02(c), the appropriate remedy is to dismiss the suit against the Defendants, without prejudice. *Powell v. Breslin,* 195 Md.App. 340, 361, 6 A.3d 360, 372 (2010). We affirmed that judgment in *Breslin v. Powell,* 421 Md. 266, 298–99, 26 A.3d 878, 898 (2011) [4] (*"Powell I "*), and directed ultimately the vacation of Judge Allison's grant of summary judgment and issuance by the trial court of an order compliant with our holding. *Id.* at 299, 26 A.3d at 898. On 28 September 2011, Judge W. Michel Pierson of the Circuit Court, on remand in *Powell I,* entered an order dismissing the complaint, without prejudice. By that time, however, the statute of limitations had expired on the underlying merits of the substantive claims at the heart of the amended complaint in *Powell I. See* CJP § 5–109.[5]

---

On 5 February 2007, Powell filed a Motion to Reconsider, asserting that the proper remedy for disqualification of a Certificate was dismissal, without prejudice, and not the grant of summary judgment. The court denied reconsideration on 10 August 2007.

4. Of note in our opinion, we said that "dismissing the case without prejudice allows for protection of a plaintiff's rights in a medical malpractice case by providing the opportunity to re-file (assuming the limitations period has not expired)...." 421 Md. at 299, 26 A.3d at 898. The seemingly harsh result in the present incarnation of the case reinforces the adage that one may win a battle, but yet lose the war.

5. CJP § 5–109 tolls the running of the period in which to bring a claim under CJP § 3–2A–01 (within five years of the time the injury was committed, or within three years of the time the injury was discovered). At the time our decision in *Powell I* was filed on 16 August 2011, approximately nine years had passed since the injury to Mr. Powell, and seven and one-half years had elapsed since his death, although there had been some tolling periods during this time.

We turn back the clock at this point in this opinion to 2007 to pick up the skein of the relevant events. Perhaps sensing the potential for a limitations problem on the horizon, Powell on 2 February 2007 (barely one week after Judge Allison's grant of summary judgment in *Powell I*) filed a second, identical Statement of Claim (which we shall refer to as the inception of *"Powell II"*) as had been filed initially with the HCADRO in *Powell I*. Instead of requesting the HCADRO to stay *Powell II* pending the final outcome of *Powell I*, Powell filed a Certificate and waived arbitration in *Powell II* on 27 July 2007. The claim was transferred to the Circuit Court on 27 August 2007.[6] In response to Powell's complaint in *Powell II*, Appellees filed on 5 October 2007 in the Circuit Court a Motion for Summary Judgment. Appellees claimed that the doctrine of res judicata, relying on the outstanding and facially viable and effective trial court final adjudication of *Powell I* (which, at that time, was on appeal), barred the relitigation in *Powell II*. After a hearing on 26 November 2007, Judge Pierson held the summary judgment motion *sub curia* until 21 March 2008, at which time he granted Appellees' Motion for Summary Judgment, noting that a relitigation of one claim is barred by a final judgment on the merits of the same claim, "regardless of whether the prior decision was legally correct."[7]

The Clerk of the Circuit Court, however, failed to mail copies to the parties of Judge Pierson's order granting sum-

---

**6.** Powell moved in *Powell II* to consolidate *Powell I* and *Powell II*, despite Judge Allison's grant of summary judgment in favor of the Appellees (Dr. Breslin and his employer) in *Powell I* in January 2007. We could find no indication in the record that the Circuit Court ruled expressly on Powell's motion to consolidate *Powell I* and *Powell II* as those cases stood then. In the absence of a ruling on consolidation, the two cases proceeded on separate tracks. Subsequent events pushed the motion into obscurity.

**7.** Made aware at the 26 November 2007 hearing that Powell had filed on 29 October 2007 with Judge Allison in *Powell I* a motion asking her to alter or amend her judgment *nunc pro tunc*, Judge Pierson, it appears, delayed ruling on the summary judgment motion before him until Judge Allison ruled on the revisory motion before her. She denied it on 11 March 2008.

mary judgment in *Powell II*.[8] Therefore, pursuant to the Court's revisory power over a judgment under Md. Rule 2–535(b),[9] Judge Evelyn Omega Cannon vacated Judge Pierson's 21 March 2008 order and granted summary judgment anew on 3 November 2008 for the same reasons underlying Judge Pierson's order.

Powell appealed the final judgment in *Powell II* on 10 December 2008, which resulted in concurrent appeals pending before the Court of Special Appeals: *Ronald L. Powell, et al. v. Jeffrey Breslin, et al.,* 195 Md.App. 340, 6 A.3d 360 (2010) (*Powell I* ), and *Ronald L. Powell, et al v. Jeffrey Breslin, et al.,* No. 2316, September Term, 2008 (*Powell II*).[10] Although granted an extension of time to file an Appellant's brief in *Powell II,* Powell did not do so. On 7 July 2009, Powell dismissed his appeal in *Powell II.*

Almost three years after Judge Cannon's entry of final judgment in *Powell II,* and more than two years after Powell dismissed voluntarily his appeal in that case, Powell filed on 12 October 2011 in the Circuit Court in *Powell II* a Motion to Reopen Case and Vacate Judgment. He requested that the Circuit Court vacate Judge Cannon's grant of summary judgment, pursuant to Md. Rule 2–535, based on the hindsight that her reliance on the preclusive effect of Judge Allison's decision in *Powell I* was faulty because Judge Allison's decision was found on appeal to be erroneous. Appellees opposed that Motion, arguing that Powell failed to satisfy the requirements of Md. Rule 2–535 to prove fraud, mistake or irregularity to

---

**8.** The Court Clerk also failed to enter a judgment on the docket, as required by Md. Rule 2–601(a).

**9.** Md. Rule 2–535(b) provides, in relevant part:
Rule 2–535.   Revisory power
$$* \qquad * \qquad *$$
(b) Fraud, mistake, irregularity.   On motion of any party filed at any time, the court may exercise revisory power and control over the judgment in case of fraud, mistake, or irregularity.

**10.**   Appellant had appealed *Powell I* to the Court of Special Appeals on 27 March 2009, requesting review of Judge Allison's grant of summary judgment, which lead ultimately to our 2011 decision in *Powell I.*

justify reopening the enrolled final judgment in *Powell II.*
Judge Cannon denied the Motion on 17 November 2011.

Powell appealed to the Court of Special Appeals. On 1
March 2012, while the matter was pending still in the interme-
diate appellate court, Powell filed a Petition for Writ of
Certiorari with this Court. That petition posed two questions
for our review:

1. Should a case that has been dismissed solely because of
the preclusive effect of an earlier judgment in another case
be reopened if the earlier judgment is vacated?

2. If a civil case that should have been dismissed without
prejudice is erroneously dismissed with prejudice and the
error is not corrected until after the limitations period has
expired, does the plaintiff have any recourse?

We granted Powell's petition and issued a writ of certiorari
on 20 April 2012, *Powell v. Breslin,* 425 Md. 396, 41 A.3d 571
(2012), before the intermediate appellate court decided the
appeal.[11] In his petition for writ of certiorari, Powell main-
tained that, unless we order the trial court to reopen *Powell II*
on essentially a novel equitable basis, or interpret Maryland
Rule 2–535(b) to conclude that there was fraud, mistake or
irregularity in Judge Cannon's refusal to reopen *Powell II,*
Appellant will lose the opportunity obtained by prevailing in
*Powell I.*

We hold, first, that Judge Cannon did not err as a matter of
law in granting summary judgment on 12 November 2008

---

**11.** Should the procedural posture of the case not be complicated
enough at this point, in January 2012, Powell filed a third Statement of
Claim, HCA No.2012–037 (*"Powell III"*), identical to the ones in *Powell
I* and *Powell II,* in the HCADRO. As of 23 March 2012, that Statement
of Claim was stayed in the HCADRO, pending final disposition in the
present case before this Court.

As a means for trying to keep the head of a reader of this opinion
from spinning off his or her body while trying to comprehend the
relatively complex history of this litigation as recited narratively here,
we constructed a critical time line of events (attached as an appendix to
this opinion) that portrays in a visually linear and comparative format
the relative chronology of the material events in the oft-times parallel
litigation of *Powell I* and *Powell II.*

because, at the time Judge Cannon entered final judgment in *Powell II,* the doctrine of res judicata barred the maintenance of the litigation of *Powell II* based on Judge Allison's as-yet-then-unreversed 24 January 2007 grant of summary judgment in *Powell I.* We are unmoved sufficiently to deviate from the appropriate application of res judicata principles here, where Powell failed to seek available alternative procedural means to preserve his underlying claims before *Powell I* and *Powell II* became final judgments. Second, in the absence of clear and convincing evidence that fraud, mistake or irregularity occurred in the proceedings leading to Judge Cannon's denial of Powell's revisory motion, we hold that there are no grounds to vacate Judge Cannon's ruling under Maryland Rule 2–535(b). We hold, therefore, that Judge Cannon did not abuse her discretion in denying Powell's Motion to Reopen Case and Vacate Judgment.

## II.  STANDARDS OF REVIEW

■■■  There are two standards of appellate review relevant to our consideration of this case.  As regards Powell's challenge to Judge Cannon's denial of his Md. Rule 2–535(b) motion, abuse of discretion is the benchmark.  *Das v. Das,* 133 Md.App. 1, 15, 754 A.2d 441, 449 (2000).  Abuse of discretion occurs "where no reasonable person would take the view adopted by the [trial] court," or when the court acts "without reference to any guiding rules or principles." *North v. North,* 102 Md.App. 1, 13–14, 648 A.2d 1025, 1031 (1994).  We will find an abuse of discretion when the ruling is "clearly against the logic and effect of facts and inferences before the court[,]" when the decision is "clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result[,]" when the ruling is "violative of fact and logic[,]" or when it constitutes an "untenable judicial act that defies reason and works an injustice." *Id.* (internal quotation marks omitted).

■■  As for our review of Judge Cannon's grant of summary judgment, where there is no genuine dispute of material fact, we consider "whether the trial court was legally correct."

*Sadler v. Dimensions Healthcare Corp.,* 378 Md. 509, 533, 836 A.2d 655, 669 (2003) (quoting *Goodwich v. Sinai Hosp. of Balt., Inc.,* 343 Md. 185, 204, 680 A.2d 1067, 1076 (1996)).

## III. DISCUSSION

### 1. The Doctrine of Res Judicata Precludes the Litigation of *Powell II*

█  We consider first the grounds on which Judge Cannon granted Appellees' Motion for Summary Judgment in *Powell II*, in order to determine whether Appellees were entitled to summary judgment as a matter of law in 2008—at a time when the shelf-life of Judge Allison's grant of summary judgment in *Powell I* was valid, but prior to reversal of that judgment. *See Grimes v. Kennedy Krieger Inst., Inc.,* 366 Md. 29, 71, 782 A.2d, 807, 833 (2001). Appellees assert that they were entitled to judgment as a matter of law because Judge Allison's order in *Powell I* barred the relitigation of Appellant's identical claims in *Powell II*. We hold that the doctrine of res judicata, as explicated in our precedents, supports Judge Cannon's judgment.

█  Res judicata is an affirmative defense that precludes the same parties from relitigating any suit based upon the same cause of action because the second suit involves a judgment that "is conclusive, not only as to all matters that have been decided in the original suit, but as to all matters which with propriety could have been litigated in the first suit." *See Alvey v. Alvey,* 225 Md. 386, 390, 171 A.2d 92, 94 (1961); *see also Mackall v. Zayre Corp.,* 293 Md. 221, 228, 443 A.2d 98, 102 (1982) (stating that "if a proceeding between parties involves the same cause of action as a previous proceeding between the same parties, the principle of res judicata applies and all matters actually litigated or that could have been litigated are conclusive in the subsequent proceeding").

██  In Maryland, the doctrine of res judicata precludes the relitigation of a suit if (1) the parties in the present litigation are the same or in privity with the parties to the

earlier action; (2) the claim in the current action is identical to the one determined in the prior adjudication; and (3) there was a final judgment on the merits in the previous action. *Colandrea v. Wilde Lake Cmty. Ass'n, Inc.*, 361 Md. 371, 389, 761 A.2d 899, 908 (2000); *Cicala v. Disability Review Bd.*, 288 Md. 254, 263, 418 A.2d 205, 211 (1980); *Cook v. State*, 281 Md. 665, 668, 381 A.2d 671, 673 (1978). The overarching purpose of the res judicata doctrine is judicial economy. *Colandrea*, 361 Md. at 391, 761 A.2d at 909 (noting that the res judicata doctrine is applied to "avoid the expense and vexation of multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibilities of inconsistent decisions").

██ The same parties and the same claims are raised in *Powell I* and *Powell II*. *Id.* at 389, 761 A.2d at 908. Judge Allison's grant of summary judgment in *Powell I* was a final judgment on the merits at the time that it was entered[12] and, therefore, was conclusive as to the matters decided in that case, as well as to "all matters which with propriety could have been litigated in the first suit." *See Alvey*, 225 Md. at 390, 171 A.2d at 94. Hence, Appellees were entitled to summary judgment as a matter of law in *Powell II* at the times Judge Pierson and Judge Cannon granted summary judgment because the claims raised in that case were disposed of by the Circuit Court's then-valid adjudication of *Powell I*. *See Fledderman v. Fledderman*, 112 Md. 226, 239, 76 A. 85 (1910). This conclusion is consistent with our precedents applying the doctrine of res judicata. As Judge Pierson observed during the motion hearing over which he presided, even if a ruling in an original suit was found later to be in error, "[t]he mere fact that the prior ruling is wrong does not deprive it of *res judicata* effect." *See Garrett Park v. Montgomery Cty. Council*, 257 Md. 250, 256–58, 262 A.2d 568, 571–72 (1970) (res

---

12. In his order granting Appellees' Motion for Summary Judgment, Judge Pierson noted that there was no dispute that the adjudication in *Powell I* was a final judgment on the merits, "whether or not it should have been."

judicata applied based on the decision of an administrative agency even if that decision was based on erroneous testimony or mistake); *Fertitta v. Brown,* 252 Md. 594, 599–600, 251 A.2d 212, 214–15 (1969) (res judicata barred appellant's declaratory relief because the trial court's adjudication was a binding final judgment on the merits, whether or not the trial judge's reasons for denying relief were "sound"); *Lusby v. Baltimore Transit Co.,* 199 Md. 283, 285, 86 A.2d 407, 408 (1952) (res judicata applies even to an erroneous ruling, as long as the doctrine's requirements are met); *Gonsalves v. Bingel,* 194 Md.App. 695, 719, 5 A.3d 768, 783 (2010) (holding that res judicata applies even when a trial court's denial of leave to amend was erroneous); *Reed v. Allen,* 286 U.S. 191, 198–99, 52 S.Ct. 532, 76 L.Ed. 1054 (1932) (where the U.S. Supreme Court declined to disturb a final judgment that was based on the res judicata effect of a decision subsequently reversed on appeal because of the potential risks to finality of judgments).

There is another reason why the grant of summary judgment in *Powell II,* based on the grounds of res judicata, was warranted.   At the time that Judge Pierson conducted a hearing on Appellees' motion for summary judgment in *Powell II,* Powell was continuing to litigate concurrently an identical claim in *Powell I,* as he had filed a Motion to Alter or Amend Judgment *Nunc Pro Tunc* on 29 October 2007 in *Powell I,* which yet had to be decided by Judge Allison (she denied it ultimately on 11 March 2008).   Prior to filing the October 2007 motion seeking retrospective relief, Powell had filed also a Motion for Reconsideration of the grant of summary judgment in *Powell I,* which had been denied also by Judge Allison. Such a multiplicity of litigation epitomizes the very hazards that the doctrine of res judicata seeks to avoid:  the costs of time, the waste of judicial resources, and the increased possibility of inconsistent judicial decisions and action.   *See Colandrea,* 361 Md. at 387, 761 A.2d at 907.   Judicial economy helps draw the necessary line.   Otherwise, as Judge Pierson reiterated aptly during the November 2007 hearing on Appellees' motion for summary judgment, "a litigant could file endless

motions for reconsideration until the cows come home." Judge Cannon, therefore, granted properly Appellees' Motion for Summary Judgment on 3 November 2008, and we decline to disturb that ruling.

### 2. Other Available Means to Preserve Powell's Substantive Claims Were Not Employed

Between the Circuit Court's 2007 summary judgment adjudication in *Powell I* and the reversal of that judgment on appeal in 2010–11, Powell commenced *Powell II* by filing a second Statement of Claim with HCADRO and the complaint with the Circuit Court, apparently in an effort to forestall the expiration of his substantive claims on the merits due to operation of the applicable statute of limitations. Powell, however, did not seek any of several available procedural opportunities to preserve his claims regarding Judge Pierson's/Judge Cannon's rulings in *Powell II,* and thus did not forestall a conclusive judgment in *Powell II,* while pursuing the appeal in *Powell I.* Commentators have noted for practitioners the same or similar conundrum as Appellant faced in this case, and recommended several tactical strategies to protect claims from the statute of limitations running while pursuing reversal of a potentially erroneous dispositive trial court ruling:

> Substantial difficulties result from the rule that a final trial-court judgment operates as *res judicata* while an appeal is pending. The major problem is that a second judgment based upon the preclusive effects of the first judgment should not stand if the first judgment is reversed. In some cases, ... the second judgment has become conclusive even though it rested solely on a judgment that was later reversed. This result should always be avoided, *whether by delaying further proceedings* in the second action pending conclusion of the appeal in the first action, *by a protective appeal in the second action* that is held open pending determination of the appeal in the first action, or by direct action to vacate the second judgment.

18 A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4433, (2d ed.1987) (emphasis added).

Powell could have filed a motion to stay either the administrative or judicial proceedings in *Powell II.* A stay is a tool of equity that a court or administrative agency is authorized to grant for adjudicative economy. *See Comm'n on Med. Discipline v. Stillman,* 291 Md. 390, 402, 435 A.2d 747, 753 (1981) (explaining that "[a] stay is simply a tool that a court may use in the proper exercise of its authority. The power to stay administrative action is only inherent in the sense that it is a traditional power that equity courts could utilize without express statutory authorization." (citing *Executors of Nelson H. Fooks v. Ghingher,* 172 Md. 612, 192 A. 782 (1937))). We have held that, when parallel related cases are pending judicial action simultaneously, a proper tactical decision may be to file a motion to stay one proceeding while the other proceeding is prosecuted to exhaustion, in order to preserve the opportunity to pursue the stayed suit's claim, if necessary. *See Md. Reclamation Assocs. v. Harford Cnty.,* 382 Md. 348, 367, 855 A.2d 351, 362 (2004) (observing that when the merits of one case cannot be decided because the other is pending in a trial court or on appeal, a stay of one proceeding, for a reasonable time, is the appropriate action). Pursuant to Md. Rule 2-632(a),[13] a court has inherent authority to model the terms of any stay pending appeal, according to the conditions of the proceedings. *O'Donnell v. McGann,* 310 Md. 342, 351, 529 A.2d 372, 377 (1987).

For example, in *Converge Services v. Curran,* 383 Md. 462, 479-80, 860 A.2d 871, 881 (2004), we identified recourse to a stay as a useful tool where, as was the case during the November 2007 Motion for Summary Judgment hearing in

---

**13.** Md. Rule 2-632(a) provides:

Rule 2-632. Stay of enforcement

(a) Stay of interlocutory order. On motion of a party the court may stay the operation or enforcement of an interlocutory order on whatever conditions the court considers proper for the security of the adverse party. The motion shall be accompanied by the moving party's written statement of intention to seek review of the order on appeal from the judgment entered in the action.

*Powell II*, a judicial remedy is sought in one forum while a related and parallel administrative or judicial action is pending in the same or another forum. We noted in *Converge* that the trial court may "stay its consideration of the invoked judicial remedy and await the result of the administrative proceedings before addressing the appropriateness of the relief sought in the litigation." *Id.* at 480, 850 A.2d at 881. *See Md. Reclamation Assocs.*, 382 Md. at 367, 855 A.2d at 362 (ordering a stay of a judicial proceeding until administrative remedies were exhausted); *Arroyo v. Bd. of Educ.*, 381 Md. 646, 660, 851 A.2d 576, 584–85 (2004) ("[T]here is no prohibition against filing an independent judicial action while primary administrative proceedings are under way, but, that there is a prohibition against deciding, i.e., adjudicating, the issue in the independent judicial case until a final administrative determination is made."); *Md.–Nat'l Capital Park & Planning Comm'n v. Crawford*, 307 Md. 1, 18, 511 A.2d 1079, 1087–88 (1986) (observing that a trial court may order a stay when two separate remedies, such as administrative and judicial ones, are available).

In the present case, there were at least two strategic opportunities to move to stay the *Powell II* proceedings. First, when Powell filed the Statement of Claim in the HCADRO on 2 February 2007 (barely one week after Judge Allison's grant of summary judgment in *Powell I*), he could have sought a stay of further proceedings in *Powell II*, pending final appellate review in *Powell I* of Judge Allison's grant of summary judgment. Merely filing a second Statement of Claim in the HCADRO is insufficient to toll the statute of limitations. *See* CJP § 5–109(d). Hence, the statute of limitations on Powell's substantive claims was tolled on 2 February 2007, the date that he filed *Powell II*, but began ticking away once Judge Pierson granted final judgment in March 2008, and appears to have expired before we issued our opinion in *Powell I*.[14] *See* CJP § 5–109. The HCADRO pos-

---

**14.** We note that no party to the underlying suit disputes that the statute of limitations for Powell's substantive claims expired before the filing on 16 August 2011 of our opinion in *Powell I*.

sesses the discretion to stay further proceedings pending resolution of a similar or related parallel claim and, thus, could have afforded Powell the opportunity to move for a stay of the proceedings in *Powell II,* pending the outcome of the appeal in *Powell I. See McGann,* 310 Md. at 351, 529 A.2d at 377; *see also Stillman,* 291 Md. at 402, 435 A.2d at 753; *Md. Reclamation Assocs.,* 382 Md. at 367, 855 A.2d at 362.

A second opportunity to move to stay the *Powell II* proceedings presented itself after the transfer by the HCADRO of *Powell II* to the Circuit Court in August 2007. A request to stay all proceedings in the trial court, until appellate review was exhausted in *Powell I,* would have averted, if granted, the finality conundrum. We note that, during oral argument before Judge Pierson on 26 November 2007 on the summary judgment motion in *Powell II,* Appellant's trial counsel asked Judge Pierson to stay consideration of the pending motion until Judge Allison held a hearing and ruled on Powell's pending Motion to Alter or Amend Judgment *Nunc Pro Tunc* in *Powell I.* Powell argued that, after Judge Allison ruled, Judge Pierson could act on the summary judgment motion before him, with full knowledge of how and why Judge Allison ruled. Although Judge Pierson did not act explicitly on this limited request for stay, he held the matter before him *sub curia* until Judge Allison issued her ruling. Powell did not request, however, Judge Pierson to stay generally all proceedings pending the outcome of the appeal of *Powell I.* Doing so might have preserved Powell's claims in *Powell II* before the limitations period expired on his substantive claims. *See Curran,* 383 Md. at 480, 860 A.2d at 881; *Crawford,* 307 Md. at 18, 511 A.2d at 1087–88; *Stillman,* 291 Md. at 402, 435 A.2d at 753.

The next apparent opportunity that Powell had to forestall a preclusive judgment in *Powell II,* and thereby preserve his substantive claims, was during the time that the *Powell I* and *Powell II* appeals were pending concurrently before the Court of Special Appeals. At that time, several tactical options were available. One might have been to request the Court of Special Appeals to "provide a judicial remedy in advance of

final action in the ... proceeding[,]" such as asking the intermediate appellate court to address how to prevent the expiration of the limitations period should Judge Allison's ruling be found ultimately to be erroneous. *Curran*, 383 Md. at 480–81, 860 A.2d at 882. An alternative remedy to seek might have been for the intermediate appellate court to issue an order "staying, suspending, or modifying" Judge Allison's or Judge Cannon's orders in *Powell I* and *II*, respectively, pursuant to Md. Rule 8–425.[15] Furthermore, Powell might have initiated a "protective appeal" of *Powell II* to the Court of Special Appeals, requesting it be held open pending the determination of *Powell I*. *See* Wright & Miller, *supra.* Instead, Powell dismissed his appeal in *Powell II*. We shall not fashion nor recognize here a novel legal remedy to a seemingly harsh result where existing procedural safeguards were available to avert the Waterloo of the ability to litigate the underlying substantive claims.

### 3. Md. Rule 2–535 Does Not Provide Relief to Powell

Finally, we consider whether, pursuant to Md. Rule 2–535(b), Powell demonstrated fraud, mistake, or irregularity in the proceedings below sufficient to overturn the final judgment in *Powell II*. Powell argues that, because ultimate appellate action in *Powell I* found Judge Allison's grant of summary judgment improper, Judge Pierson's/Judge Cannon's rulings in *Powell II* must be vacated and contends that Md. Rule 2–535(b) permits such relief. We disagree.

Maryland Rule 2–535(b) requires a showing, by clear and convincing evidence, that a proceeding was infected with fraud, mistake, or an irregularity. *Tandra S. v. Tyrone W.*, 336 Md. 303, 314, 648 A.2d 439, 444 (1994). The touchstones

---

**15.** Md. Rule 8–425 provides:

> Rule 8–425. Injunction pending appeal
>> (a) Generally. During the pendency of an appeal, the Court of Special Appeals or the Court of Appeals may issue (1) an order staying, suspending, modifying, or restoring an order entered by the lower court or (2) an injunction, even if injunctive relief was sought and denied in the lower court.

for applying Md. Rule 2–535 are further illuminated by CJP § 6–408, which provides:

> § 6–408.   Revisory power of court over judgment
>
> For a period of 30 days after the entry of a judgment, or thereafter pursuant to motion filed within that period, the court has revisory power and control over the judgment. After the expiration of that period the court has revisory power and control over the judgment only in case of fraud, mistake, irregularity, or failure of an employee of the court or of the clerk's office to perform a duty required by statute or rule.

The overarching aim of Md. Rule 2–535(b), therefore, is the preservation of the finality of judgments, unless specific conditions are met.   Apart from reciting to us the language of Md. Rule 2–535(b), however, Powell does not point to any precedent, let alone evidence in this record, that entitles him to relief according to that Rule. Although Powell does not suggest specifically that either fraud, mistake, or irregularity existed in the proceedings below, we conclude, from our review of the record, that there is no evidence of either of those three conditions, so as to justify relief under Md. Rule 2–535(b).

First, no fraud was present in any proceeding below.   Under Md. Rule 2–535(b), fraud is defined as an event that is "collateral to the issues tried in the case where the judgment is rendered[,]" such as "whether the fraud prevented the actual dispute from being submitted to the fact finder at all." *Hresko v. Hresko,* 83 Md.App. 228, 232, 574 A.2d 24, 27 (1990). We conclude that no form of extrinsic fraud is to be found here.

Second, there is no evidence of procedural mistake.   We have interpreted "mistake" narrowly to include jurisdictional error, such as when judgment "has been entered in the absence of valid service of process; hence, the court never obtains personal jurisdiction over a party." *Tandra S.,* 336 Md. at 317, 648 A.2d at 445; *Hamilos v. Hamilos,* 297 Md. 99, 107, 465 A.2d 445, 449–50 (1983).   The lower courts had

jurisdiction patently over the parties and the subject matter of this action. Powell does not contend otherwise.

Third, we do not believe there is any relevant evidence of *procedural* uncured irregularity in this case. We have defined "irregularity," for the purposes of Md. Rule 2–535(b), as a failure to follow required procedure or process. *Early v. Early*, 338 Md. 639, 653, 659 A.2d 1334, 1341 (1995). Although the procedural history of this litigation is tortured, the summary judgment entered in *Powell I*, despite being afforded preclusive effect before being found erroneous, is not an "irregularity" within the meaning of the Rule. Rather, the only example of procedural irregularity in this record was in the Circuit Court clerk's failure to mail to all parties copies of Judge Pierson's order granting summary judgment in *Powell II*. As a result of this irregularity, Powell was not able to file an appeal until Judge Cannon cured the irregularity, pursuant to Md. Rule 2–535, by vacating Judge Pierson's order and entering her order to like effect. There is no other evidence of irregularity in this case. As Powell failed to allege or demonstrate by clear and convincing evidence that Md. Rule 2–535(b) applies to his benefit in this case, we hold that no relief under that Rule is available.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED; COSTS TO BE PAID BY APPELLANTS.**