REPORTED

IN THE COURT OF SPECIAL APPEALS

 OF MARYLAND

No. 1694

September Term, 2014

_____

VANESSA KREYHSIG

v.

LUIS MONTES

_____

Kehoe,
Nazarian,
Arthur,

JJ.

_____

Opinion by Nazarian, J.

_____

Filed:  October 29, 2015

Vanessa Kreyhsig ("Mother") appeals the decision by the Circuit Court for Montgomery County to change the name of her minor child ("Son") to include the surname of his father, Luis Alfonso Montes ("Father"). We agree with Mother that the issues Father raised in the petition before us had already been decided, and decided against him, and we reverse.

## I. BACKGROUND

Son was born on January 6, 2009, and Mother (who has never been married to Father) named him "Kaio Henrique Stockmann Kreyhsig." Father does not dispute paternity, but the parties do dispute the extent to which Mother has included Father in Son's upbringing. Mother alleges that Father "took no part" in Son's life for a year after he was born. Father claims that Mother did not tell him when Son was born, kept him from seeing Son in the hospital, and did not list him as the father on Son's birth certificate.

Father first began trying to change Son's name to reflect his during their custody and child support litigation, Case No. 82912-FL (the "Custody Case"). At the close of that case, on September 22, 2010, Father made an oral motion to change Son's name, and the trial court granted the motion on February 24, 2011.[1] Mother sought *en banc* review, and on December 22, 2011, a panel of the circuit court vacated the name change order and "reversed and remanded for further hearing," which the court ordered "shall be held before

---

[1] The record of this case contains only the docket sheet from that case, which reflects both the oral motion and the trial judge's decision, rather than the order itself, but the parties don't dispute this part of the history.

[the circuit court judge who presided over the custody case], as available." Although the December 22, 2011 Order made reference to its "reasons stated on the record," the record here does not reflect what those reasons were. And although numerous motions relating to custody, child support, and other issues caused that case to remain open, no further hearing on the name change was scheduled or held. After about nine months passed with no activity, Mother moved to dismiss Father's "cause of action for a name change." On January 10, 2013, the court denied that Motion, but defined the procedural path Father should follow in that case:

> It appears that the [*en banc* Order] was never effectuated and no remand hearing was scheduled. If [Father] wishes to further pursue this matter, he shall request a hearing on the remand by no later than January 18, 2013. While the court believes that [Father] cannot be prohibited from seeking a name change for his minor child in the future, he will have to file a new petition to do so if no hearing is requested by January 18.

In the meantime, Father kept trying, and actually had filed and lost a separate petition by the time the circuit court entered the January 10, 2013 order in the Custody Case. On August 22, 2012, Father had filed a Petition for Name Change of A Minor, which bore a new docket number, Case No. 105554-FL (we will call it the "First Petition"), and asked the court to change Son's name to "Kaio Henrique Montes." Mother opposed the First Petition, and on December 11, 2012, the court denied it:

> UPON CONSIDERATION of [the First Petition], [Mother's] Answer, and [Mother's] Objection to the [First Petition] and Motion to Dismiss, and *the Court being fully informed in the facts and circumstances of this case*, it is therefore this 4th day

2

> of December, 2012, hereby ORDERED that the [First Petition] be and the same hereby is DENIED.

(Emphasis added.)[2] Father filed a timely Notice of Appeal from the December 11, 2012 Order. But we dismissed the appeal on April 4, 2013, after Father failed to file a Civil Appeal Information Report.

Father then filed a second Petition to Change Name, the one at issue in this appeal; it bore Case No. 118677FL (he amended it on April 25, 2014, so we will refer to as the "Amended Second Petition"). Mother moved to dismiss the Amended Second Petition, arguing that nothing had changed since the court had denied the First Petition, or in the alternative for summary judgment on the merits. She asked as well for the court to declare Father a "vexatious litigant" and to order him to pay her attorneys' fees and costs.

On August 15, 2014, the court held a hearing and denied the Motion to Dismiss, reasoning that *res judicata* "doesn't apply because there wasn't a final decision on the merits." The court also disagreed that Father was barred from refiling because he had "slept on his rights," and found that the January 10, 2013 Order gave Father the right to file the First Petition. Then, on the merits, the trial court considered the factors listed in *Schroeder v. Broadfoot*, 142 Md. App. 569, 588 (2002), and concluded that it would be in Son's best

---

[2] We refer to this as the "December 11, 2012 Order" because it was not docketed until a full week after its signing date.

interests for his name to be changed to "Kaio Henrique Montes Kreyhsig."[3]  Mother filed

a Notice of Appeal.

## II. DISCUSSION

Mother argues that the trial court should have dismissed the Amended Second

Petition (the only one before us) on the grounds of *res judicata*.[4]  We agree, even after

recognizing the differences in the way *res judicata* applies to cases involving the care and

custody of children. We review *de novo* the circuit court's legal decision that *res judicata*

did not bar the Second Petition. *See Davidson v. Seneca Crossing Section II Homeowner's*

---

[3] That court also granted Mother's request for attorneys' fees and ordered Father to pay $1,000 toward the fees and costs she had incurred. Father has not appealed from that decision.

[4] Mother presents three questions for our review:

1.  Did the trial court err by denying [Mother's] Motion to Dismiss and granting [the Amended Second Petition where [Father's] request for a name change was previously denied on its merits in a prior case and thus was barred by *res judicata*?

2.  Did the trial court err by granting the [Amended Second Petition] over [Mother's] objections, without finding the required existence of extreme circumstances, and, without performing a proper analysis of the factors listed in *Schroeder v. Broadfoot*[, 142 Md. App. 569 (2002)]?

3.  Did the trial court err when it held a hearing on the merits of the [Amended Second Petition], and rendered judgment thereafter, when the case had not been brought to issue, by the filing of an Answer or entry of a Default Judgment, and thereby completely preventing the parties from taking discovery?

4

*Ass'n, Inc.*, 187 Md. App. 601, 633 (2009) ("The defense of *res judicata* is before 'the court as a question of law.'" (quoting *Beach v. Mueller*, 32 Md. App. 219, 224 n.3 (1976))). And because we agree with Mother that the trial court should have dismissed the Amended Second Petition, we need not address whether the trial court prematurely heard evidence on the substantive issues in the case or whether it correctly found that the name change was in Son's best interests.

Father tried twice to change Son's name before he filed the Second Petition. *First,* he won and lost the relief he seeks here during the Custody Case—he won at first, but an *en banc* panel in the Custody Case reversed, and, after an admittedly confusing delay, the court offered Father the opportunity for a further hearing that he opted not to pursue. *Second*, Father filed and lost the First Petition. Father responds that it was necessary for him to file three different cases because "each time [he] attempted to file his new Petition, he was advised by the [circuit court] Family Clerk's window that the previous case was statistically closed and that he would need to open a new case." Father excuses the *seriatim* filings by pointing to administrative confusion arising from the progression of the Custody Case and the First Petition, and he (mis)characterizes the decisions in those two proceedings as "dismissals" rather than denials of relief on the merits.

Mother's *res judicata* argument depends on whether Father's cause of action—in this case, his request to change Son's name—had previously been decided on the merits:

> *Res judicata* is an affirmative defense that precludes the same
> parties from relitigating any suit based upon the same cause of
> action because the second suit involves a judgment that "is

5

conclusive, not only as to all matters that have been decided in the original suit, but as to all matters which with propriety could have been litigated in the first suit."

*Powell v. Breslin*, 430 Md. 52, 63 (2013) (quoting *Alvey v. Alvey*, 225 Md. 386, 390 (1961)). Generally speaking, *res judicata* precludes a claim when three conditions have been met:

> (1)    the parties in the current litigation are the same or in privity with those in prior litigation;
>
> (2)    the second suit concerns the same cause of action or claim as the first; and
>
> (3)    "in the first suit, there must have been a valid final judgment on the merits by a court of competent jurisdiction."

*Colandrea v. Wilde Lake Cmty. Ass'n, Inc.*, 361 Md. 371, 389 (quoting *FWB Bank v. Richman*, 354 Md. 472, 492 (1999)).[5]

These traditional elements apply slightly differently when the merits of the claim are grounded in the best interests of a child. *See Hixon v. Buchberger*, 306 Md. 72, 83 (1986) ("Overarching all of the contentions in disputes concerning custody or visitation is the best interest of the child."). The merits of claims relating, for example, to child custody (and, we now hold, to name changes), can evolve over time as the child's circumstances

---

[5] *Res judicata* is not to be confused with its cousin, collateral estoppel. *See GAB Enterp. v. Rocky Gorge Dev., LLC*, 221 Md. App. 171, 186 (2015) (explaining that *res judicata* "holds parties to a *claim* that they have previously litigated" (emphasis added), whereas collateral estoppel bars "relitigation of *issues* that the same parties already had litigated" (emphasis in original)).

evolve. In those cases, then, a request for relief previously adjudicated is not barred by *res judicata* if the new request is grounded in changed circumstances. Put another way, the second element of the *res judicata* analysis—the second suit concerning the same cause of action or claim—hasn't been met where the circumstances underlying the second proceeding reflect material change from the first time around. *See McMahon v. Piazze*, 162 Md. App. 588, 596 (2005) ("The 'material change' standard ensures that principles of *res judicata* are not violated by requiring that such a showing must be made *any time* a party to a custody or visitation order wishes to make a contested change, . . . [in order to] preserve stability for the child and to prevent relitigation of the same issues." (emphasis in original) (citations omitted)).[6] An example that illustrates the point came up during oral argument: imagine that a trial court denies a mother's name change petition when a child is one year old, and thus orders the child to retain his father's surname, but seven years later, the child's father is convicted of murder. Under the typical *res judicata* analysis, a new complaint filed by the same party seeking the same relief would be barred. But under the gloss we recognized in *McMahon*, a name change petition by the mother grounded in the child's changed circumstances would not be barred—the particular "claim," *i.e.*, a name change

---

[6] We explained in *McMahon* that requiring a material change in custody cases "has its roots in principles of claim and issue preclusion," and that *res judicata* also would "not apply to bar a successive termination of parental rights case where there has been a change in circumstances affecting the child's welfare since the earlier hearing." *Id.* at 594-95 (citations omitted).

7

analyzed against the child's materially different circumstances, would not have been heard or decided.

Unlike our hypothetical, though, Father's Second Petition does not allege that any of the circumstances bearing on Son's best interests changed in the time since the first two decisions denying the name change. So whether we characterize it as lack of a "material change" that might affect his best interests, or a "second suit [that] concerns the same cause of action or claim as the first," *Colandrea*, 361 Md. at 389 (citations omitted), the Second Petition does not offer any factual basis to justify revisiting the issue yet again.

And this brings us back around to the ultimate question—whether either or both of the prior rulings constituted a "valid final judgment." Both Mother and Father rely on our recent decision in *Davis v. Wicomico Cnty. Bureau of Support Enf't*, 222 Md. App. 230, *cert. granted*, 444 Md. 638 (2015). In *Davis*, the putative father asked the circuit court to order a paternity test and strike a prior finding that he was the natural father of a child. The Bureau of Support Enforcement moved for summary judgment, arguing that the father had already signed an affidavit of parentage in a prior child support proceeding, but the father claimed that his signature had been obtained through fraud or misrepresentation. *Id.* at 235-36. The circuit court granted summary judgment, holding that the earlier litigation constituted a final judgment on the merits, and we affirmed, reasoning that in the first go-round, "the trial court made a finding of paternity based on the affidavits of parentage and ordered appellant to pay child support. Appellant did not appeal that order." *Id.* at 240.

Father contends that his name change request was not "actually litigated" in the First Petition, impliedly because there was no hearing like the one that took place in *Davis*. He also seems to argue that because the denial of the name change request in the First Petition did not explicitly state that it was "with prejudice," the December 11, 2012 Order did not constitute a final judgment. Unfortunately, Father confuses *dismissal* with *denial.* Although it is true a case dismissed without prejudice can be refiled without running afoul of the *res judicata* doctrine, *Lennon v. Strazzella*, 331 Md. 270, 275 (1992), Father's prior requests were adjudicated on the merits, and neither was dismissed, voluntarily or otherwise.[7] Mother appealed the decision in Father's favor in the Custody Case, and the *en banc* panel reversed it on the merits. Father complains that he never had a hearing in connection with his First Petition, but Maryland Rule 15-901(g) expressly permits a court to rule on a name change petition without a hearing, and the circuit court "DENIED" it after receiving and reviewing Mother's Answer and Objection.[8] And although Father appealed the denial—which seems to acknowledge its finality—he failed to file a Civil

---

[7] *Lennon* discussed the finer points of when a *voluntary* dismissal constitutes an adjudication on the merits for purposes of *res judicata*, and the Court of Appeals held that in such a case, the dismissal would need to state that it was "with prejudice" in order to operate as a bar to a later action under *res judicata* principles. *Id.* at 276. But that distinction isn't relevant here.

[8] Father argues in his brief in this Court that he was "never served with [Mother's] Answer, Objection, or Motion to Dismiss" in the First Petition proceeding, but any such defenses should have been raised in that case.

9

Appeal Information Report, even after a show cause order issued, and allowed the *appeal* to be dismissed.

Again, we acknowledge the confusion within the circuit court about the status of the various cases, which led to an unusual progression of events. With the benefit of appellate hindsight, we can see how it all happened. But the procedural unorthodoxies came about because of Father's serial filings, however explainable they might be, and they don't nullify the *res judicata* effect of either of the prior decisions. If circumstances bearing on Son's best interests change materially in the future, Father might have another opportunity to seek a name change. Unless and until that occurs, however, Father is not entitled to another bite at this particular apple.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED AND REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**