<u>The Bank of New York Mellon, Trustee et al. v. Heinz Otto Georg et al.</u>, No. 20, September Term, 2017

**PRINCIPLE OF JUDICIAL ESTOPPEL – STANDING – PRIVITY – DOCTRINE OF RES JUDICATA – DOCTRINE OF COLLATERAL ESTOPPEL – FINAL JUDGMENT –** Court of Appeals held that prerequisites that must exist before judicial estoppel may be applied were not satisfied, and, as such, trial court properly declined to apply judicial estoppel to bar Respondents' argument that Petitioners were in privity with prior plaintiff. Specifically, Court of Appeals held that, because three circumstances that must be fulfilled for application of judicial estoppel were not established, and because standing and privity do not give rise to mutually exclusive arguments, but are instead two different concepts, trial court properly ruled that judicial estoppel did not bar Respondents' privity argument.

Court of Appeals also held that trial court's ruling as to merits of case concerning mutual mistake of fact was independent, alternative ruling, and not contingent ruling, and thus, under circumstances of case, constituted final judgment for purposes of res judicata and collateral estoppel, and that subsequent trial court properly determined that elements of res judicata and collateral estoppel were satisfied, and thus barred Petitioners from bringing claims in second lawsuit.

Circuit Court for Baltimore County
Case No. 03-C-13-013909

Argued: November 7, 2017

IN THE COURT OF APPEALS

OF MARYLAND

No. 20

September Term, 2017

_____

THE BANK OF NEW YORK MELLON,
TRUSTEE ET AL.

v.

HEINZ OTTO GEORG ET AL.

_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

_____

Opinion by Watts, J.

_____

Filed: December 18, 2017

This case is, as the parties themselves acknowledge, a unique, fact-specific case involving issues of judicial estoppel, and, specifically, whether a party's arguments as to standing and privity constitute inconsistent legal positions, and a determination of what constitutes a final judgment for purposes of res judicata and collateral estoppel. To set the legal stage for the case, we briefly describe the principle of judicial estoppel and the doctrines of res judicata and collateral estoppel.

Judicial estoppel has been defined as "a principle that precludes a party from taking a position in a subsequent action [that is] inconsistent with a position taken by him or her in a previous action." Dashiell v. Meeks, 396 Md. 149, 170, 913 A.2d 10, 22 (2006) (citation and internal quotation marks omitted). "[J]udicial estoppel applies when it becomes necessary to protect the integrity of the judicial system from one party who is attempting to gain an unfair advantage over another party by manipulating the court system." Id. at 171, 913 A.2d at 23. To that end,

> [b]efore judicial estoppel may be applied, three circumstances must exist: (1) one of the parties takes a [] position that is inconsistent with a position it took in previous litigation, (2) the previous inconsistent position was accepted by a court, and (3) the party who is maintaining the inconsistent positions must have intentionally misled the court in order to gain an unfair advantage.

Id. at 171, 913 A.2d at 22 (citation omitted).

In Powell v. Breslin, 430 Md. 52, 63-64, 59 A.3d 531, 537-38 (2013), this Court described the doctrine of res judicata, or claim preclusion, as well as the circumstances that must be present for the doctrine to apply, stating:

> Res judicata is an affirmative defense that precludes the same parties from relitigating any suit based upon the same cause of action because the second suit involves a judgment that is conclusive, not only as to all matters

that have been decided in the original suit, but as to all matters which with propriety could have been litigated in the first suit.

In Maryland, the doctrine of res judicata precludes the relitigation of a suit if (1) the parties in the present litigation are the same or in privity with the parties to the earlier action; (2) the claim in the current action is identical to the one determined in the prior adjudication; and (3) there was a final judgment on the merits in the previous action. The overarching purpose of the res judicata doctrine is judicial economy.

(Citations and internal quotation marks omitted).

In a similar vein, this Court has described the doctrine of collateral estoppel, or issue preclusion, as follows: "[W]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Colandrea v. Wilde Lake Cmty. Ass'n, Inc., 361 Md. 371, 387, 761 A.2d 899, 907 (2000) (citation and internal quotation marks omitted). For the doctrine of collateral estoppel to apply, the following four-part test must be satisfied:

1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?

2. Was there a final judgment on the merits?

3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?

4. Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

Id. at 391, 761 A.2d at 909 (citation omitted). We have explained the relationship between the doctrines of res judicata and collateral estoppel as follows:

Collateral estoppel is concerned with the issue implications of the earlier litigation of a different case, while *res judicata* is concerned with the legal

> consequences of a judgment entered earlier in the same cause. The two doctrines are based upon the judicial policy that the losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on issues raised, or that should have been raised.

Id. at 390-91, 761 A.2d at 909 (citations omitted).

Now, we briefly set the factual stage. Here, in 2010, a financial institution that was the former owner of a note for a refinance mortgage loan sued a married couple for reformation of the refinance deed of trust because the wife had not signed the refinance deed of trust, and the former owner of the note was thus unable to institute foreclosure proceedings against the couple's property, which the couple owned as tenants by the entirety. Significantly, the former owner of the note brought the lawsuit in its name and on its own behalf, although it was no longer the note owner and was rather the master servicer. Ultimately, after a bench trial, the trial court ruled in the couple's favor and against the former owner of the note as to the merits of the case on the issue of mutual mistake and as to standing to bring the lawsuit. Three years later, in 2013, the current owner of the note and the title insurer of the refinance mortgage loan sued the couple for reformation of the refinance deed of trust. In the second lawsuit, the trial court again ruled in the couple's favor, concluding that the current owner of the note and the title insurer were barred by res judicata and collateral estoppel from bringing and relitigating the claims in the second lawsuit. In so ruling, the trial court rejected an argument that the first trial court's ruling on the merits of the case had been a contingent ruling and not a final judgment. The trial court also concluded that that judicial estoppel did not apply and that the couple was not barred from asserting an argument in the second lawsuit that the current

owner of the note and the title insurer were in privity with the former owner of the note/master servicer. On appeal, the Court of Special Appeals affirmed the trial court's judgment. Thereafter, the current owner of the note and the title insurer filed in this Court a petition for a writ of *certiorari*, which this Court granted.

Against this very distinctive legal and factual backdrop, we decide whether: (I) the trial court in the second lawsuit properly declined to apply judicial estoppel and properly ruled that the couple was not barred by judicial estoppel from asserting that the current owner of the note and the title insurer were in privity with the former owner of the note/master servicer; and (II) the trial court in the second lawsuit correctly determined that the first trial court's ruling as to the merits of the case concerning mutual mistake was an independent, alternative ruling, and not a contingent ruling—*i.e.*, that the ruling on the merits was a final judgment—and that res judicata and collateral estoppel barred the current owner of the note and the title insurer from bringing and relitigating their claims in the second lawsuit.

We hold that: (I) the prerequisites that must exist before judicial estoppel may be applied are not satisfied, and, as such, the trial court properly declined to apply judicial estoppel to bar the couple's argument that the current owner of the note and the title insurer were in privity with the former owner of the note. Specifically, because the three circumstances that must be fulfilled for the application of judicial estoppel are not established—the couple's position with respect to privity is not inconsistent with their position with respect to standing in the first lawsuit, as standing and privity do not give rise to mutually exclusive arguments but are instead two different concepts—the trial court

- 4 -

properly ruled that judicial estoppel did not bar the couple's privity argument; and (II) the first trial court's ruling as to the merits of the case concerning mutual mistake was an independent, alternative ruling, and not a contingent ruling, and thus, under the circumstances of this case, constituted a final judgment for purposes of res judicata and collateral estoppel. Accordingly, the trial court in the second lawsuit properly determined that the elements of res judicata and collateral estoppel were satisfied and thus barred the current owner of the note and the title insurer from bringing the claims in the second lawsuit.

## BACKGROUND

This case involves a refinance mortgage loan for real property located in Cockeysville, Maryland ("the Property")[1] owned by Heinz Otto Georg ("Heinz") and his wife Susan M. Georg ("Susan"), Respondents.[2] On February 15, 2002, Respondents first acquired title to the Property, which was unimproved, as tenants by the entirety. In June 2004, Respondents entered into a contract with a builder for the Property. And, on September 30, 2004, Respondents executed a deed of trust in favor of Chevy Chase Bank, F.S.B. ("Chevy Chase"), with an original construction loan amount of $807,000. Almost two years later, on September 2, 2006, Respondents executed a second deed of trust in favor of Chevy Chase for an additional $100,000 home equity line of credit. Thereafter, Respondents sought to refinance the construction loan and the home equity line of credit,

---

[1]At other places in the record, the Property is described as being in Hunt Valley, Maryland, not Cockeysville, Maryland.

[2]Due to the common surname of Respondents, we shall refer to Respondents individually by their first names as needed.

both of which were secured by deeds of trust on the Property.

To that end, on October 26, 2006, Heinz executed a note in the principal amount of $1,130,119 to First Horizon Home Loan Corporation ("First Horizon"), a lender, for the purpose of refinancing the construction loan and the home equity line of credit loan ("the Note"). The Note was secured by a deed of trust, signed that same day by Heinz, in favor of First Horizon ("the refinance Deed of Trust"). Closing instructions for the refinance mortgage loan—*i.e.*, the Note and the refinance Deed of Trust—identified the sole borrower as Heinz, and both the Note and the refinance Deed of Trust in favor of First Horizon also identified Heinz as the sole borrower. Only Heinz signed the Note and refinance Deed of Trust; indeed, neither document provided for Susan's signature. In connection with recording the refinance Deed of Trust in favor of First Horizon, however, both Heinz and Susan executed notarized affidavits affirming that, as of October 26, 2006, the unpaid principal balance of the construction loan secured by the first Chevy Chase deed of trust was $807,000, and that the unpaid principal balance of the home equity line of credit loan secured by the second Chevy Chase deed of trust was $100,000.

First Horizon apparently intended that the refinance mortgage loan would be used to release the two deeds of trust on the Property in favor of Chevy Chase, and Old Republic National Title Insurance Company ("Old Republic"), Petitioner, issued a title insurance policy ("the Policy") insuring that the refinance mortgage loan would be secured by a first lien against the Property and protecting First Horizon against any issues that could occur during the execution of the mortgage. In the event of a claim, the Policy provided Old Republic the option to attempt to cure any defect in the refinance Deed of Trust or to pay

the claim. The Policy extended to First Horizon and First Horizon's successors and/or assigns and insured that the refinance Deed of Trust would be executed by both Heinz and Susan. Specifically, the "insured mortgage" covered by the Policy was described as the "Deed of Trust from Heinz [] and Susan [] to Larry Rice, Trustee, securing First Horizon [] in the original principal amount of $1,130,119.00 dated October 26, 2006 and recorded November 3, 2006, in the Land Records of Baltimore County, Maryland[.]"

In December 2006, the Note and accompanying refinance Deed of Trust were transferred to an intermediary and then to The Bank of New York Mellon ("BNYM"), Petitioner. This transfer was completed pursuant to a "Pooling and Servicing Agreement" dated December 1, 2006 ("the PSA"), an agreement by which BNYM purchased in bulk a pool of notes and mortgages. BNYM purchased the Note and remains the owner of the Note. Under the PSA, BNYM serves as Trustee for the "First Horizon Alternative Mortgage Securities Trust 2006-FA8 Mortgage Pass-Through Certificates, Series 2006-FA8" ("the Trust"), and First Horizon became the master servicer for the Trust.[3] Pursuant to the PSA, First Horizon received compensation for serving as master servicer. Under the PSA, as master servicer of the refinance mortgage loan and other loans, First Horizon was obligated to "service and administer" the pool of loans—*i.e.*, collect payments. The PSA also authorized First Horizon to take any action "that it may deem necessary or desirable in connection with such servicing and administration, including . . . effectuat[ing] foreclosure or other conversion of the ownership of the Mortgaged Property securing any

---

[3]Effective January 16, 2014, Nationstar became the master servicer, replacing First Horizon.

Mortgage Loan[.]"

After executing the refinance Deed of Trust and the Note, Respondents paid monthly mortgage payments for a number of years before they encountered financial difficulties. In June 2009, First Horizon declared Heinz in default under the Note, and took steps to initiate foreclosure under the refinance Deed of Trust. As a practical matter, however, because Respondents owned the Property as tenants by the entirety, Susan's signature on the refinance Deed of Trust had been required to encumber the Property. Thus, in the absence of Susan's signature on the refinance Deed of Trust, First Horizon could not foreclose on the Property in the event of a default on the refinance mortgage loan by Heinz.

In a letter dated September 2, 2010, First Horizon submitted to Old Republic a title claim under the Policy, explaining that Susan was "on title but not as a borrower on the foreclosing" refinance Deed of Trust and that "Susan did sign the tax-property affidavit." First Horizon explained that this was a "defect[ that] might cause loss or damage for which [Old Republic] may be liable[.]" First Horizon stated that it was requesting Old Republic's assistance to "protect the lender's interest in accordance with the terms of the" Policy, and that it was "most anxious to resolve th[e] matter in order to proceed with its foreclosure sale and convey good tile." In an e-mail dated September 15, 2010, the vice president and claims counsel for Old Republic's Corporate Legal Department advised First Horizon that Old Republic "elect[ed] to retain counsel to file a lawsuit to reform the [refinance Deed of Trust] to include Susan [] and/or to subordinate the interest of Susan[.]" To that end, Old Republic retained Morton A. Faller, Esquire ("Faller") to represent it.

**First Horizon Litigation (First Lawsuit)**

On September 21, 2010, First Horizon, by and through its attorney, Faller, filed in the Circuit Court for Baltimore County ("the circuit court") a complaint seeking reformation of the refinance Deed of Trust and other equitable relief ("the First Horizon litigation"). Later, First Horizon, by and through its attorney, Faller, filed an amended complaint seeking reformation of the refinance Deed of Trust, a declaration that First Horizon had a valid first mortgage lien against the Property, an order directing Susan to execute a confirmatory joinder of the refinance Deed of Trust, a declaration that First Horizon had a mortgage lien through equitable subrogation on the Property, and an order establishing an equitable mortgage against the Property under the refinance Deed of Trust. Although BNYM had become the owner of the Note in December 2006 and First Horizon was the master servicer of the refinance mortgage loan when the complaint and amended complaint were filed in the First Horizon litigation, First Horizon brought the litigation not in a representative capacity or as the servicer, but as the lender and owner of the Note. For example, in the amended complaint, First Horizon identified itself as the "Lender" and stated that it was "the party secured by the [refinance D]eed of [T]rust on [the P]roperty[.]"

Old Republic exercised control over aspects of the First Horizon litigation. For example, in addition to recommending that the action be instituted, Old Republic selected, retained, paid, and regularly communicated with Faller, who served as First Horizon's counsel in the First Horizon litigation. Indeed, Faller and his law firm regularly invoiced Old Republic for costs, expenses, and attorney's fees related to the First Horizon litigation. And, with respect to the First Horizon litigation, Old Republic discussed and approved

litigation strategy, selected trial witnesses, named the plaintiff, and decided whether to appeal the circuit court's rulings.

Trial in the First Horizon litigation was set to begin on April 23, 2012. During discovery, and in Respondents' request for production of documents, Respondents' counsel asked First Horizon's counsel for all documents confirming that First Horizon was the holder of the Note. In response, First Horizon's counsel stated that First Horizon was the holder of the Note—*i.e.*, that it owned the refinance mortgage loan. This, however, was incorrect, as First Horizon had assigned and sold the Note to BNYM in December 2006— *i.e.*, BNYM was the holder/owner of the Note.

On April 23 and 24, 2012, before the Honorable Jan M. Alexander ("Judge Alexander"), a trial in the First Horizon litigation was held. A few days prior to trial, on April 20, 2012, First Horizon's counsel e-mailed to Respondents' counsel a document titled "Correction to Caption of Complaint and Name of Plaintiff" ("the correction to caption") in which First Horizon's counsel stated, in full, the following:

> Madam Clerk:
>
> Please note that the caption of the Amended Complaint and name of the Plaintiff, First Horizon Loans, a division of First Tennessee Bank National Association, should be corrected to the following:
>
> > First Horizon Home Loans, a division of First Tennessee Bank National Association, Master Servicer in its capacity as agent for The Bank of New York Mellon, Trustee for the Holders of the Certificates, First Horizon Mortgage Pass-Through Certificate Series FHAMS 2006-FA8

At the start of the trial on April 23, 2012, after the case was called, First Horizon's counsel, Faller, asked the circuit court to approach the clerk to file the correction to caption.

Respondents' counsel moved to strike the correction to caption and moved to dismiss the amended complaint on the ground that First Horizon lacked standing. In relevant part, Respondents' counsel argued that BNYM "for the trust itself [] would have to have sued to reform the" refinance Deed of Trust, and that First Horizon had "no standing to be proceeding to reform the [refinance D]eed of [T]rust and it would be as if you sold your house and then sued someone for trespassing on your lawn after you moved out and you transferred." Respondents' counsel further contended:

> The attempt to substitute a new party in this case as the plaintiff is not only strictly prohibited because now we know that First [Horizon] has no standing to be a party in this case, but it doesn't even follow the protocol required by the [Maryland R]ules. If they were going to change a party, they would have to file an amended complaint within 30 days of trial, . . . they would have to ask leave of court to file it and filed a red line version of the complaint[.]

In response, Faller contended that he had only "recently" learned that First Horizon was the master servicer and not the lender, and argued that the issues in the case concerned what happened when the parties went to settlement on the refinance mortgage loan, and that First Horizon was the lender at that time, and had been the "master servicer either when it owned the loan or when it sold it to a securitized trust continuously from 2006 to the present."

Judge Alexander denied the motion to dismiss the amended complaint and recessed to consider the correction to caption. After the recess, Judge Alexander explained that, in his view, the correction to caption was actually a motion for substitution of plaintiff, and Judge Alexander stated that he denied "the request to amend or substitute the plaintiff in this case[,]" and explained that the Maryland Rules "do not allow for the substitution of a

plaintiff unless . . . one of the original plaintiffs still remains in the case." Immediately thereafter, Respondents' counsel moved to dismiss the case or, in the alternative, for summary judgment based on lack of standing. Faller responded that First Horizon "would intend to proceed [to] trial and prove that First Horizon as serv[ic]er has the authority." In other words, First Horizon argued that it had standing because it was authorized by the PSA to seek reformation of the refinance mortgage loan on BNYM's behalf in its own name. Judge Alexander stated that he would reserve on the motion for summary judgment and allow the case to proceed to trial. The trial thus proceeded with First Horizon bringing the litigation in its own name, even though it was undisputed that, at that time, First Horizon was the master servicer, and not the owner, of the Note and refinance Deed of Trust.

At trial, First Horizon presented its case-in-chief, calling three witnesses and introducing numerous exhibits into evidence. First Horizon attempted to prove that Susan knew that she was supposed to sign the refinance Deed of Trust, that she had intended to sign the refinance Deed of Trust, and that her failure to sign the refinance Deed of Trust was a mistake on her part. According to First Horizon, because it had also made a mistake in failing to have Susan sign the refinance Deed of Trust, there had been a mutual mistake, and the circuit court therefore had the power to reform the refinance Deed of Trust.

First Horizon's third witness, Richard Stern ("Stern"), the vice president of asset recovery for First Horizon, testified that First Horizon was the "agent and master servicer" for BNYM, and that First Horizon started as the owner/servicer, and became the master servicer, of the refinance mortgage loan. First Horizon's counsel asked Stern whether First Horizon, as master servicer, had the authority to foreclose on a loan owned by BNYM.

Respondents' counsel objected, and the circuit court sustained the objection, ruling that it would "depend on what" the PSA stated. First Horizon's counsel then handed Stern a copy of the PSA and asked Stern to identify the document; Stern stated that it was the PSA between First Horizon, as master servicer, and BNYM, as trustee. First Horizon's counsel asked Stern how the PSA related to the refinance mortgage loan. Stern asked to see the correction to caption that the circuit court had stricken. Stern testified that, based on the correction to caption, the refinance mortgage loan was a part of the group of loans covered by the PSA. First Horizon's counsel offered the PSA into evidence, and Respondents' counsel objected. The circuit court stated that First Horizon could proffer what the PSA stated, and, specifically, whether First Horizon could stand in BNYM's stead—*i.e.*, whether First Horizon had standing to bring suit on its own behalf. The circuit court stated that it would give the parties the night to look at the PSA, and that it would take up the standing issue and the PSA's admissibility the next morning. At that point, Stern's testimony resumed.

The next day, April 24, 2012, trial resumed, and First Horizon's counsel identified the provisions in the PSA that he alleged authorized First Horizon, as master servicer, to bring the action. After reading certain provisions of the PSA, First Horizon's counsel contended that those provisions "authorize[d] First Horizon in its own name and as master servicer with respect to th[e] loan to take all action on behalf of the trust that it is the servicer for with respect to the mortgage loans, and on that basis [it] would ask the [circuit c]ourt to" admit the PSA into evidence. Respondents' counsel objected again and argued, in relevant part, that BNYM was the "proper party" to bring the action, and that First

Horizon could have brought the action potentially only in their capacity as agent for BNYM, contending:

> As they attempted to do, which the [circuit c]ourt properly denied under the rules, they potentially could file a suit as an agent for the trust fund to protect those interests but this agreement does not give it the right to file on its own behalf as a party and then attempt to have the [circuit c]ourt essentially treat it as it if is [BNYM].

Respondents' counsel asserted that First Horizon lacked standing because BNYM, not First Horizon, was the party secured by the refinance Deed of Trust, and First Horizon brought the action as a party and not as BNYM's agent. Respondents' counsel also argued that the PSA was inadmissible because Schedule I, the mortgage loan schedule listing the loans that were subject to the PSA, was not included, and, as such, "[t]here [wa]s absolutely no way of knowing that the Georg[] loan actually applies to this agreement." Respondents' counsel explained that, absent Schedule I, First Horizon could not prove that the PSA applied to the refinance mortgage loan and that they simply did not know who owned the refinance mortgage loan.

First Horizon's counsel responded that Stern's testimony established that the refinance mortgage loan was subject to the PSA, and that the circuit court had the authority to receive the PSA solely for the purposes of establishing standing, and that First Horizon was authorized to bring the action in its own name. First Horizon's counsel also stated: "I would hope that the [circuit c]ourt would be inclined to try to resolve this case on its merits." Judge Alexander ultimately admitted the PSA into evidence, and stated: "I think it goes to weight as opposed to the admissibility and I will consider it in light of arguments on both sides."

At that point, First Horizon rested, and Respondents' counsel orally moved for judgment. Respondents' counsel argued, in pertinent part:

> We don't have the proper party, [First Horizon] do[es]n't have standing to bring this case. The resolution of this on its merits, to even hear further testimony would be meaningless, a meaningless exercise.
>
> If they can't bring a case, they don't have standing, it is just fundamental 101 and this case should be dismissed on that basis solely. Moreover, they haven't sued the proper party in that you can't seek what equitable relief against [Susan] because she is not a party to the deed of trust, not a party to the note. They can only seek reformation against the party to a contract. There is no evidence that has been offered in the case[-]in[-]chief by the plaintiff here that [Susan] entered into any agreement with First Horizon. And therefore, she can't be -- she can't be a proper party to an action for reformation of a contract of which there is no evidence that it was entered into. A contract is mutual assent to agreements to the terms. They have offered nothing. So there is nothing to reform. There is no basis upon which to bring her into a situation in which is conceded that she wasn't asked to sign anything and she didn't sign anything. Moreover, their burden, the burden of production, the burden of proof in this case is on them. And they have not even tossed it over to our side on production. There is absolutely no evidence that could establish mistake of fact by [Susan].
>
> They have offered what? They have offered the testimony of persons who didn't ask her to sign anything. They have offered the testimony of persons who have agreed that she didn't ask to sign anything, that -- and there was no evidence that she was under mistake of any fact whatsoever during this transaction.
>
> So there is simply no basis to even continue this case on a fundamental issue of procedure and really jurisdiction of the [circuit c]ourt because we don't have parties here that can have the rights [] adjudicated before it. But also, on the issue of the evidence, they have to prove beyond a reasonable doubt that [Susan] was under a mistake of fact. They didn't even call her as a witness. What evidence is there of her state of mind that she would -- she intended to sign this deed of trust?

First Horizon's counsel responded "that First Horizon [could] bring th[e] action for the reasons [] already discussed." First Horizon's counsel also contended that the evidence

- 15 -

demonstrated that there had been a mutual mistake of fact in the execution of the refinance Deed of Trust.

After hearing argument from the parties on the motion for judgment, Judge Alexander granted the motion for judgment based on the merits of the case, orally ruling from the bench as follows with respect to a lack of mutual mistake:

> All right. I'm granting the motion at the close of [First Horizon]'s case, since [First Horizon] has not produced the burden of going forward with this matter for the reasons that I have stated from the bench. There is no evidence that [Susan] was knowledgeable about this transaction, knowledgeable that a mistake had been made or knowledgeable that it was her intent to be included on this deed of trust.
>
> I would note for the record the evidence is that all of these documents were not prepared by [Respondent]s. They were all prepared by [First Horizon]. No doubt there were mistakes made, but the mistakes were made by [First Horizon] in the preparation of the documents. That cannot be impugned to [Respondent]s and it actually works against [First Horizon]. Case law is clear against that. They were in a position of superiority in the preparation and the conduct of this transaction. They were in complete control. They made a mistake. They don't get a do over unless they can show that the mistake was mutually made by the parties and without a showing that [Susan] knew that this mistake had taken place, I cannot allow the case to go forward any further.
>
> So I am granting the motion for judgment at the close of [First Horizon]'s case.

Immediately after Judge Alexander's oral ruling, First Horizon's counsel asked the circuit court to clarify two issues:

> Number 1, does that mean that the [circuit c]ourt finds that there was sufficient standing established to allow this case to be heard on the merits? I just need to make sure the record is clear on that issue.
>
> The second issue is has the [circuit c]ourt considered the equitable subrogation argument which would say that there was a defective deed of trust, . . . that there was at least the lender's ability to step into the shoes of

the first and second mortgages that were satisfied with the proceeds? Because what Your Honor is doing is dealing with one issue but not necessarily the other.

In response, Judge Alexander addressed standing, ruling that First Horizon lacked standing and explaining:

> First of all, with regard to the standing issue, the [circuit c]ourt is not satisfied that based on documents that have been presented for the arguments made by [Respondents'] counsel, there is a representation in the contract[, *i.e.*, the PSA,] of an indexing of all of the loans that have been covered by this contract. That index is not in this contract. There is no identification of this particular loan as being subject to this agreement. No disrespect to [] Stern's testimony, but it was very self[-]serving in that regard. He has no knowledge as to whether this particular loan was included. I think it was supposition on his part that it might have been in the same timeframe but nothing to indicate that this contract covers this particular loan. Any identification numbers and loan reference numbers, the attachment is not there.
>
> So with regard to that, there is no standing. As I stated at the outset, not allowing the substitution of parties, the amended complaint references First Horizon Loans, not as an agent for any subsequent party, not as a representative for any subsequent party, but as the home loan holder, the loan holder. And that's clearly not the case based on the evidence that has been presented. They are not the home loan holder. If they were to have brought this case in a representative capacity, it should have been titled as such, should have been pled as such. All references in the document and the complaint should have said as the representative, as the agent, as the authorized agent or such language as that. So no, I will grant the [Respondents'] motion in that regard as well.

Judge Alexander also stated that he did not rule in First Horizon's favor with respect to equitable subrogation because First Horizon could not, "as it is pled, [it is] not entitled to that. [It] cannot step into the place of the new home loan holder, loan note holder."

First Horizon's counsel interjected and the following exchange occurred:

[FIRST HORIZON'S COUNSEL]: . . . Your Honor, if the [circuit c]ourt finds there is no standing to have brought this action, the [circuit c]ourt has gone ahead and now made fact determinations as if the trial had proceeded

- 17 -

on the merits and I'm trying to understand if there is no standing, then there is no ability to go forward on any claims. But Your Honor is making rulings --

THE COURT: The whole idea of the standing was subject to this document that you were -- you just presented today and I said I would hold that under advisement until we saw what it was.

[FIRST HORIZON'S COUNSEL]: I understand.

THE COURT: I had not read the document and it was not pointed out to me until just a few minutes ago that it references an index of loans that it covers.

[FIRST HORIZON'S COUNSEL]: I understand. But if there is no standing, then there is no case to go forward.

At that time, Respondents' counsel made the following suggestion to Judge Alexander:

Grant the motion for judgment because you have heard the evidence, you have considered the merits and the rulings on the merits are in the alternative. So even if they had standing, because that way the issue would be ripe so that the [circuit c]ourt's efforts in this court in hearing what they have asked you to hear, if the [circuit c]ourt were to review it, they can consider all of the issues.

Judge Alexander asked Respondents' counsel: "So you have no objection to me finding that there is standing?" Respondents' counsel stated:

No, I actually say in the alternative. So you can have the ruling that if the [circuit c]ourt could say even if there was standing, I have considered the presentation of evidence as if there was standing to, for judicial economy, so that we don't have to have a whole new trial.

Judge Alexander then orally issued rulings on standing and the merits, stating: "That sounds appropriate. I will say that I do not find that they had standing, however, in the alternative, I do not find that [First Horizon] has met its burden of production to have the case go forward based on the evidence for the reasons previously stated." The trial recessed immediately thereafter.

- 18 -

On May 3, 2012, consistent with his oral ruling, Judge Alexander issued an order granting judgment in favor of Respondents, stating, in relevant part,

Trial having taken place in this matter on April [23 and] 24, 2012, [First Horizon] having concluded the presentation of its case, this Court finds that [First Horizon] does not have standing to bring th[e] action against [Respondent]s. In the alternative, this Court finds that even if [First Horizon] had standing to pursue th[e] action, the evidence which [First Horizon] presented was insufficient to meet its burden of production.

First Horizon appealed. On September 30, 2013, the Court of Special Appeals issued an unreported opinion dismissing the appeal due to First Horizon's failure to file a timely notice of appeal.

**Current Litigation (Second Lawsuit)**

A couple of months after the Court of Special Appeals's dismissal of the appeal in the First Horizon litigation, on December 5, 2013, BNYM, as trustee, and Old Republic initiated a second lawsuit in the circuit court by filing a complaint against Respondents. The second lawsuit was based on the same facts and legal basis as the First Horizon litigation was—namely, First Horizon and Susan had made a mutual mistake in failing to include Susan on the refinance Deed of Trust. And, in the second lawsuit, Petitioners raised substantially similar causes of action to those that were raised in the First Horizon litigation—equitable claim for reformation of the refinance Deed of Trust, request for an order compelling Respondents to "execute appropriate paperwork, or alternatively reforming the existing refinance [D]eed of [T]rust[,]" equitable mortgage, equitable subrogation, and equitable lien. And, as with the First Horizon litigation, Old Republic paid for counsel in the second lawsuit and determined who was to be named a plaintiff. Of

note, Petitioners were represented by a different law firm in the second lawsuit; Faller and his law firm were no longer counsel of record.

After discovery was completed, on June 5, 2015, Respondents filed a "Motion for Summary Judgment, or for Judicial Decision under [Maryland] Rule 2-502,"[4] arguing as follows with respect to the issue of privity:

> [T]he undisputed material facts prove that [Petitioners] are in privity with the plaintiff in a prior lawsuit against [Respondents, the First Horizon litigation]. Moreover, the claims and issues in this lawsuit and the prior lawsuit are the same, and the prior lawsuit resulted in a final judgment on the merits. Accordingly, this lawsuit is barred by *res judicata* and collateral estoppel, and [Respondent]s are entitled to summary judgment, or in the alternative, for a judicial decision in their favor under [Maryland] Rule 2-502.

A few days later, on June 8, 2015, Petitioners filed a motion for partial summary judgment, arguing that there was no dispute as to material facts relevant to the equitable subrogation claim and that they were entitled to judgment as a matter of law with respect to the equitable subrogation claim. Petitioners also argued that they were entitled to summary judgment with respect to the various defenses raised by Respondents, including res judicata and

---

[4]Maryland Rule 2-502, entitled "Separation of questions for decision by court," provides:

> If at any stage of an action a question arises that is within the sole province of the court to decide, whether or not the action is triable by a jury, and if it would be convenient to have the question decided before proceeding further, the court, on motion or on its own initiative, may order that the question be presented for decision in the manner the court deems expedient. In resolving the question, the court may accept facts stipulated by the parties, may find facts after receiving evidence, and may draw inferences from these facts. The proceedings and decisions of the court shall be on the record, and the decisions shall be reviewable upon appeal after entry of an appealable order or judgment.

collateral estoppel. By the time of the filing of the motion for partial summary judgment, Petitioners were represented by yet another law firm. And, on July 6, 2015, Petitioners filed an opposition to the motion for summary judgment or for judicial decision under Maryland Rule 2-502, arguing, in pertinent part, that Respondents' position that BNYM was in privity with the plaintiff in the First Horizon litigation was "not only incorrect, but also directly and unequivocally contrary to the position [that] they took in successfully defending the First Horizon [litigation], such that they are judicially estopped from asserting privity in this action."

On October 30, 2015, the Honorable Julie L. Glass ("Judge Glass") conducted a motions hearing. After hearing extensive argument from the parties, Judge Glass advised that she would reserve ruling. On December 9, 2015, Judge Glass entered an opinion and order denying Petitioners' motion for partial summary judgment and granting Respondents' motion for judicial decision. On December 11, 2015, Judge Glass issued an amended opinion and order, vacated the December 9, 2015 opinion and order, and again denied Petitioners' motion for partial summary judgment and granted Respondents' motion for judicial decision; on December 28, 2015, the amended opinion and order were entered. In the amended opinion, Judge Glass succinctly set forth the parties' respective arguments with respect to the First Horizon litigation, stating:

> [Respondent]s argue that [Petitioner]s' claims, in this second lawsuit, are barred by the doctrines of *res judicata* and collateral estoppel, based on the May 3, 2012 Court Order issued by [Judge] Alexander in the First Horizon [litigation]. [Petitioner]s, in response, contend that Judge Alexander's Order qualifies as a contingent ruling and cannot serve as a basis for *res judicata* or collateral estoppel.

Judge Glass first addressed res judicata, summarizing the parties' positions and making the following findings:

> In the First Horizon [litigation], counsel for [Respondent]s argued that First Horizon had no standing because it was not the holder of the [refinance mortgage] Loan and had no right to assert a claim other than as the servicer. BNYM is the successor to First Horizon's interest in the Property. Therefore, the Court finds that [Petitioner]s, Old Republic and BNYM, are in privity with First Horizon, satisfying the first requirement of *res judicata*.
>
> * * *
>
> [Petitioner]s brought this second lawsuit based on the exact same facts that gave rise to the First Horizon [litigation] and seeks the same relief as in the first lawsuit – reformation of the [refinance] Deed of Trust, equitable subrogation, and equitable mortgage. Moreover, Old Republic acknowledged that the first and second lawsuits were based on the same transaction of facts (i.e. the closing of the [refinance mortgage] Loan and the [refinance] Deed of Trust). This Court notes that Schedule I of the [refinance mortgage] Loan, which was not introduced at the First Horizon [litigation], was presented by [Petitioner]s at the October 30, 2015 hearing. The Court therefore finds that there are immaterial differences between the first and second lawsuit.
>
> . . . At the Circuit Court level, there was a full trial where [Petitioner]s had a full and fair opportunity to bring all of its claims. The [] Court of Special Appeals found that the Circuit Court's judgment in the first lawsuit became a final judgment when First Horizon dismissed the other defendants from the case.
>
> * * *
>
> In [Petitioner]s' view, . . . any ruling on the merits was at most a contingent ruling which is not a final judgment on the merits and has no preclusive effect. [Petitioner]s contend that the decision in [a prior case] is consistent with the fundamental concept that a contingent judgment is not a final judgment. To further support their position, [Petitioner]s, in their Motion, discuss a Seventh Circuit Court which stated that a contingent judgment is not final until the contingency materializes.
>
> The Court finds that with regard to the third element of *res judicata* the same issue of whether [the] PSA covers [the refinance mortgage] Loan

which was determined in the first lawsuit cannot be relitigated.

(Citation and record citations omitted). Judge Glass then ruled on res judicata, stating:

> Because this proceeding is between the same parties or those in privity with each other and upon the same causes of action, the principle of *res judicata* applies and all matters actually litigated or that could have been litigated are conclusive in this case and thus barred. As all [of] the elements of *res judicata* have been established, the Court finds that there is a sufficient basis based on the undisputed facts that this second lawsuit must be dismissed.

In other words, Judge Glass rejected Petitioners' contention that Judge Alexander's rulings were contingent rulings.

Next, Judge Glass made the following findings with respect to collateral estoppel:

> In addressing the first element of collateral estoppel, [Respondent]s claim that [Petitioner]s are barred from relitigating the same issues of [Susan]'s intention and whether [Heinz] owned the [refinance mortgage] Loan. [Respondent]s correctly assert that [Petitioner]' claims for equitable subrogation, equitable mortgage, and equitable lien all center on whether [Susan] intended to sign the [refinance] Deed of Trust. The issues sought to be precluded by [Respondent]s are identical to those decided by Judge Alexander in [the] First Horizon [litigation]. Therefore, as [Respondent]s contend the same issues were "actually and fully litigated in the first lawsuit."

> With respect to the second element, [Respondent]s contend that based on their argument set forth for *res judicata* regarding a final judgment on the merits, this requirement of collateral estoppel is satisfied. In the First Horizon [litigation] there was final judgment on the merits, namely that judgment was entered in favor of [Respondent]s. For the reasons discussed above, the Court hereby incorporates its findings that the first lawsuit resulted in a final judgment on the merits.

> . . . Although the doctrines of *res judicata* and collateral estoppel are distinct, a requirement shared by both its privity. In the context of collateral estoppel, privity is measured by whether the allegedly precluded party could have appealed the adverse ruling in the prior litigation. The Court therefore incorporates its findings described above under the privity requirement for *res judicata* and finds for the reasons stated above that this element of collateral estoppel has also been met.

- 23 -

Finally, under the fourth element of collateral estoppel, [Petitioner]s had a full and fair opportunity to litigate the issue in the First Horizon [litigation].  In the first lawsuit, BNYM was fully represented and could have but cho[]se not to be joined as a named party.  The Court finds that [Petitioner]s had a full and fair opportunity to litigate [their] claim in the prior litigation.

(Citations and record citations omitted).  Judge Glass then ruled on collateral estoppel, stating: "Having met all the elements for collateral estoppel, [Petitioner]s are precluded from bringing their claims in this second lawsuit.  The Court finds [Respondent]s' argument for summary judgment is persuasive as there is sufficient [] evidence to invoke the doctrine of collateral estoppel."

Judge Glass made the following findings and ruling as to judicial estoppel:

[Petitioner]s assert that [Respondent]s have taken inconsistent positions and made inconsistent representations in the previous litigation and in the present case. . . .

* * *

At the hearing before this Court, [Respondent]s challenged [Petitioner]s claiming that judicial estoppel is not met here since the position urged by [Respondent]s in the first lawsuit is not inconsistent with the one asserted in this second lawsuit.

* * *

This Court is not convinced that the doctrine of judicial estoppel applies to the instant case as [Petitioner]s cannot show that [Respondent]s took contrary positions or ever intended to mislead the Court.  The Court finds that there are insufficient facts in the instant case to support a finding of "voluntary" conduct by BNYM to apply [Respondent]s' defense of estoppel.  Having reviewed the alleged inconsistencies of the positions taken by [Respondent]s in the First Horizon [litigation] and the present case, the Court finds further that the doctrine of judicial estoppel is inapplicable under the circumstances of this case.

- 24 -

In the conclusion of the amended opinion, Judge Glass summarized her rulings, stating:

> For the foregoing reasons, the Court finds that no genuine disputes of material fact exist in this case and as a matter of law, [Respondent]s are entitled to summary judgment. Accordingly, [Petitioner]s' Motion for Partial Summary Judgment shall be DENIED, and [Respondent]s' Motion for Judicial Decision under Maryland Rule 2-502 shall be GRANTED, and there is no need to address the merits of [Respondent]s' summary judgment claim. However, the Court finds that had it addressed the summary judgment claim it would have found that no material fact is in dispute and the moving party would be able to raise summary judgment as a basis for relief.[5]

In the amended order accompanying the amended opinion, Judge Glass ordered, in pertinent part, that Petitioners' motion for partial summary judgment be denied, that Respondents' motion for judicial decision be granted, and that Respondents' motion for summary judgment need not be addressed.

The day after the amended opinion and order were entered, on December 29, 2015, Petitioners noted an appeal. On March 10, 2017, in an unreported opinion, the Court of Special Appeals affirmed the judgment of the circuit court, *i.e.*, Judge Glass's ruling. Specifically, the Court of Special Appeals explained:

> Because we hold that Judge Glass did not err in finding that Judge Alexander made alternative, independent rulings in the First Horizon trial, and because we hold that Judge Glass correctly determined that those rulings had a preclusive effect in this subsequent second trial, we affirm Judge Glass'[s] ruling on this issue.

The Court of Special Appeals rejected Petitioners' argument that Judge Alexander's two

---

[5]Judge Glass also addressed arguments, and made findings and rulings, as to laches, the statute of limitations, waiver, equitable subrogation, the statute of frauds and parol evidence, failure to mitigate damages, and denial of the execution of a written instrument. None of those findings or rulings is relevant here.

rulings—on standing and on the merits—were contingent on one another. And, according to the Court of Special Appeals, "Judge Glass did not err in determining that Judge Alexander intended his rulings in the First Horizon trial to be independent and given in the alternative." (Footnote omitted). The Court of Special Appeals determined that, among other things, Judge Glass correctly concluded that there was a final judgment on the merits in the First Horizon litigation, and, thus, Judge Glass correctly ruled that res judicata and collateral estoppel barred Petitioners from raising the same claims that were raised and litigated in the First Horizon litigation again in the second lawsuit. The Court of Special Appeals also held that Judge Glass did not abuse her discretion in declining to apply the doctrine of judicial estoppel to Respondents' argument on the issue of privity.

Thereafter, Petitioners filed in this Court a petition for a writ of *certiorari*, raising the following two issues:

1.  Whether judicial estoppel requires a showing of an intention to mislead the court apart from a demonstration that the party "has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled[.]'" *New Hampshire v. Maine*, 532 U.S. 742, 750[] (2001).

2.  Whether a ruling that a party lacked standing to assert its claims, but subject to the caveat that if the court was found to be wrong with regard to standing, the party failed to prove its case on the merits, is a contingent ruling on the merits and thus not a final judgment for purposes of res judicata and collateral estoppel, or whether the ruling on standing and the ruling on the merits are alternative rulings, each entitled to preclusive effect[.]

(First alteration in original). On June 21, 2017, this Court granted the petition. See <u>Bank of New York Mellon v. Georg</u>, 453 Md. 355, 162 A.3d 837 (2017).

- 26 -

## DISCUSSION

## I. Judicial Estoppel

## The Parties' Contentions

Petitioners contend that Respondents are judicially estopped from asserting privity. Specifically, Petitioners argue that Respondents have taken inconsistent positions by arguing that First Horizon lacked standing in the First Horizon litigation and arguing here that Petitioners are in privity with First Horizon. According to Petitioners, in the First Horizon litigation, Respondents argued that only the entity that owned the refinance mortgage loan would be the proper party to institute the action, and that First Horizon had no standing because it did not own the loan—*i.e.*, First Horizon was instead an agent for the owner, and had no authority to sue in its own name. Petitioners assert that, in this case, Respondents "reversed course" and argued that First Horizon fully represented Petitioners' interests in the First Horizon litigation. Petitioners maintain that Respondents' positions on standing and privity are contrary legal positions in successive actions based on the same facts, and that judicial estoppel applies. Petitioners argue that, by taking inconsistent legal positions, Respondents misled either Judge Alexander or Judge Glass, and assert that Judge Glass's acceptance of the privity argument "creates the perception that [she] was misled." According to Petitioners, taking directly inconsistent legal positions in successive actions, considered alone, demonstrates an intent to mislead.

Respondents counter that Judge Glass properly declined to bar their privity argument under the principle of judicial estoppel because the requirements for the application of judicial estoppel are not present. Respondents contend that they did not take

inconsistent positions in the First Horizon litigation and this case, and argue that their positions on standing and privity are compatible.  According to Respondents, in the First Horizon litigation, they argued that First Horizon lacked standing because it failed to prove that the PSA, to which both it and BNYM were parties, applied to the refinance mortgage loan; and, in this case, Respondents argued that First Horizon and BNYM were in privity because both were parties to the PSA, and because Old Republic controlled the prosecution of the First Horizon litigation.  Respondents argue that the issue of whether Petitioners were in privity with First Horizon is not the same as the issue of whether the PSA covered the refinance mortgage loan, and, thus, the positions on standing and privity were not inconsistent.  Respondents assert that their positions on standing and privity did not result in obtainment of an unfair advantage and that there is no evidence of any intent to mislead, and that such a finding is necessary for application of judicial estoppel to factual positions.  Additionally, Respondents contend that judicial estoppel does not apply to legal positions, and that, accordingly, Petitioners' argument with respect to judicial estoppel fails on that basis as well.

## Standard of Review

Neither party expressly moved for summary judgment on the basis of judicial estoppel.  At most, in a motion for partial summary judgment, Petitioners argued that they were entitled to summary judgment with respect to the various defenses raised by Respondents, including res judicata and collateral estoppel.  And, in the motion for partial summary judgment, Petitioners argued that "the doctrine of judicial estoppel now precludes [Respondent]s from asserting that BNYM elected not to participate in the First Horizon"

- 28 -

litigation. Later, in opposition to Respondents' motion for summary judgment or for judicial decision under Maryland Rule 2-502, Petitioners raised judicial estoppel as a basis for why Respondents should not be permitted to assert res judicata and collateral estoppel.

A trial court "shall" grant summary judgment "if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." Md. R. 2-501(f). In Chateau Foghorn LP v. Hosford, 455 Md. 462, 482, 168 A.3d 824, 835 (2017), we explained that we review without deference a trial court's grant of summary judgment:

> The question of whether a trial court's grant of summary judgment was proper is a question of law subject to *de novo* review on appeal. In reviewing a grant of summary judgment under Maryland Rule 2-501, we independently review the record to determine whether the parties properly generated a dispute of material fact, and, if not, whether the moving party is entitled to judgment as a matter of law. We review the record in the light most favorable to the nonmoving party and construe any reasonable inferences that may be drawn from the facts against the moving party.

(Citation and brackets omitted). Similarly, we review without deference a trial court's ruling on legal issues. See City of Bowie v. MIE Props., Inc., 398 Md. 657, 677, 922 A.2d 509, 521 (2007) ("Review of the legal questions decided below is not so deferential. We examine *de novo* issues of law as decided based on the [trial c]ourt's sustainable findings of fact." (Citation omitted)).

By contrast, denial of a motion for summary judgment, based on judicial estoppel or other grounds, is reviewed for abuse of discretion. See Dashiell, 396 Md. at 173-74, 913 A.2d at 24 ("[T]he motion judge did not abuse his discretion in denying [the petitioner]'s motion to grant summary judgment based on judicial estoppel. . . . The trial

judge, based on the record that was before him at the time, did not abuse his discretion when denying the motion for summary judgment.  [The petitioner] is, however, free to continue to assert a claim of judicial estoppel on remand and upon a more fully developed record." (Citation omitted)); id. at 165, 913 A.2d at 19 ("[A] trial court may [] exercise its discretionary power to deny a motion for summary judgment when the moving party has met the technical requirements of summary judgment.  Thus, on appeal, the standard of review for a denial of a motion for summary judgment is whether the trial judge abused his discretion and in the absence of such a showing, the decision of the trial judge will not be disturbed." (Citations omitted)).

Here, the parties dispute the standard of review applicable to Judge Glass's ruling that judicial estoppel does not apply.  Petitioners contend that Judge Glass's decision should be reviewed without deference for legal correctness.  By contrast, Respondents argue that Judge Glass's decision on judicial estoppel should be reviewed for abuse of discretion.  We conclude that, under the circumstances of this case, Judge Glass's ruling with respect to judicial estoppel is to be reviewed without deference for legal correctness. Significantly, Petitioners did not expressly move for partial summary judgment on the basis of judicial estoppel, but rather moved for partial summary judgment with respect to the equitable subrogation claim and with respect to the defenses raised by Respondents; Petitioners raised judicial estoppel in the motion for partial summary judgment only to counter Respondents' "estoppel defense[.]"  Petitioners also raised judicial estoppel in opposition to Respondents' motion for judicial decision or for summary judgment.  Under these circumstances, we conclude that the abuse of discretion standard, applicable where a

trial court denies summary judgment, does not apply in this case. Rather, as with a trial court's grant of summary judgment or ruling on a legal issue, we determine that Judge Glass's decision that judicial estoppel did not apply was a legal determination that was based on applying the law to the facts of the case and, accordingly, is reviewed without deference.

## Law

### *Judicial Estoppel*

As we stated at the outset, judicial estoppel is "a principle that precludes a party from taking a position in a subsequent action inconsistent with a position taken by him or her in a previous action." Dashiell, 396 Md. at 170, 913 A.2d at 22 (citation and internal quotation marks omitted). "[J]udicial estoppel applies when it becomes necessary to protect the integrity of the judicial system from one party who is attempting to gain an unfair advantage over another party by manipulating the court system." Id. at 171, 913 A.2d at 23. In Standard Fire Ins. Co. v. Berrett, 395 Md. 439, 462, 910 A.2d 1072, 1086 (2006), this Court elaborated on the historical context of judicial estoppel, stating:

> Maryland has long recognized the doctrine of estoppel by admission, derived from the rule laid down by the English Court of Exchequer . . . that a man shall not be allowed to blow hot and cold, to claim at one time and deny at another. . . . [W]e adopted the statement of that principle[:] Generally speaking, a party will not be permitted to maintain inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts, and another will be prejudiced by his action.

(Citations, paragraph break, and internal quotation marks omitted). And, in Underwood-Gary v. Mathews, 366 Md. 660, 667 n.6, 785 A.2d 708, 712 n.6 (2001), this Court noted

that "[j]udicial estoppel has been defined as a principle that precludes a party from taking a position in a subsequent action [that is] inconsistent with a position taken by him or her in a previous action." (Citation omitted). In other words, judicial estoppel applies where a party takes a position in subsequent litigation that is inconsistent with one that the party took in previous litigation, not where a party takes an inconsistent position within the same litigation.

> The three circumstances that must exist for judicial estoppel to apply are as follows:
>
> (1) one of the parties takes a [] position that is inconsistent with a position it took in previous litigation, (2) the previous inconsistent position was accepted by a court, and (3) the party who is maintaining the inconsistent positions must have intentionally misled the court in order to gain an unfair advantage.

Dashiell, 396 Md. at 171, 913 A.2d at 22 (citation omitted). As to the first circumstance, both this Court and the Court of Special Appeals have stated that judicial estoppel applies where a party takes inconsistent factual or legal positions; *i.e.*, the application of judicial estoppel is not limited to situations where a party takes inconsistent factual positions only. For example, recently, in Lillian C. Blentlinger, LLC v. Cleanwater Linganore, Inc., ___ Md. ___, ___ A.3d ___, No. 13, Sept. Term, 2017, 2017 WL 5507725, *12 (Nov. 17, 2017), this Court recited the three circumstances that are necessary for judicial estoppel to be applicable, including that "one of the parties takes a position that is inconsistent with a position it took in previous litigation[.]" (Citation and brackets omitted) In other words, this Court did not state that judicial estoppel does not apply where a party takes inconsistent legal positions, or otherwise limit judicial estoppel to situations where a party takes inconsistent factual positions only.

In Dynacorp Ltd. v. Aramtel Ltd., 208 Md. App. 403, 472, 56 A.3d 631, 672 (2012), cert. denied, 430 Md. 645, 62 A.3d 731 (2013), the Court of Special Appeals specifically stated that judicial estoppel applies where a "party took an inconsistent position—either legal or factual—in an earlier litigation[.]" (Citation omitted). In that case, the Court of Special Appeals concluded, upon *de novo* review, that the appellants were judicially estopped from contending that the appellees were prohibited from bringing derivative counterclaims on a company's behalf where, in earlier litigation, the appellants had contended that the appellees were required to bring derivative claims, not direct claims, on the company's behalf. See id. at 471-72, 56 A.3d at 671-72. And, in Chaney Enters. Ltd. P'ship v. Windsor, 158 Md. App. 1, 39, 854 A.2d 233, 255 (2004), the Court of Special Appeals concluded that the Workers' Compensation Commission "correctly found that Chaney's belated assertion of a special employer claim was barred under the doctrine of estoppel; its use of the term 'estoppel' encompassed judicial estoppel." (Footnote omitted). The Court of Special Appeals explained that Chaney's "belated attempt . . . to characterize Genstar as a special or joint employer represents the assertion of a legal position inconsistent with one previously advanced in a legal proceeding." Id. at 43, 854 A.2d at 257.

In Kramer v. Globe Brewing Co., 175 Md. 461, 464-65, 471, 2 A.2d 634, 635, 638 (1938), this Court held that Globe Brewing Company was judicially estopped from taking the position in a workers' compensation case that Elmer Kramer ("Kramer") was not its employee where, in an earlier tort action, it had taken the position that Kramer was its employee, which caused Kramer to dismiss the tort action. In that case, Kramer was injured

when a beer delivery truck, in which he had been riding as an assistant, overturned. See id. at 462-63, 2 A.2d at 634. Kramer apparently had been hired by the driver, who had acted without Globe Brewing's authority, and had been paid by the driver. See id. at 463, 2 A.2d at 634. Kramer brought a tort action against Globe Brewing and the driver, and Globe Brewing raised in a special plea the defense of workers' compensation exclusivity and averred in an amended special plea that Kramer was its employee at the time of the accident. See id. at 463-65, 2 A.2d at 635. Kramer then voluntarily dismissed the tort action without prejudice and sought workers' compensation. See id. at 465, 2 A.2d at 635. The agency that is now the Workers' Compensation Commission denied Kramer's claim, and the trial court affirmed the denial. See id. at 465-66, 2 A.2d at 635-36.

In Kramer, id. at 469, 2 A.2d at 637, we explained the rationale underlying judicial estoppel, stating:

> If parties in Court were permitted to assume inconsistent positions in the trial of their causes, the usefulness of courts of justice would in most cases be paralyzed; the coercive process of the law, available only between those who consented to its exercise, could be set at naught by all. But the rights of all [people], honest and dishonest, are in the keeping of the courts, and consistency of proceeding is therefore required of all those who come or are brought before them. It may accordingly be laid down as a broad proposition that one who, without mistake induced by the opposite party, has taken a particular position deliberately in the course of litigation, must act consistently with it; one cannot play fast and loose.

(Citations and internal quotation marks omitted). Applying that principle, this Court observed that there could "be no doubt" that the filing of the special plea in the tort action "was the sole reason for the dismissal of the former suit at the sole expense of" Kramer. Id. at 469-70, 2 A.2d at 637. We observed that the filing of a special plea by an employer

- 34 -

effectively bars a claimant from redress in a tort action, thereby leaving the claimant with the option of filing a claim with what is now the Workers' Compensation Commission. See id. at 470, 2 A.2d at 638. Accordingly, we concluded that Kramer "was justified in taking the action which he did take in dismissing" the tort action, and explained:

> [I]t would, in our opinion, be an injustice to him in the present suit, to permit [Globe Brewing] after having availed itself of an affirmative defense in the prior suit, to appear in a subsequent proceeding involving the same matter of controversy between the same parties, and deny the facts asserted by it, or on its behalf, in the special plea.

Id. at 471, 2 A.2d at 638.

### *Standing and Privity*

In State Ctr., LLC v. Lexington Charles Ltd. P'ship, 438 Md. 451, 502, 92 A.3d 400, 429-30 (2014), this Court explained that Maryland has adopted a "'cause-of-action' approach" to standing, "which groups the traditionally distinct concepts of standing and cause of action into a single analytical construct, labeled as 'standing,' to determine whether the plaintiff has shown that he or she is entitled to invoke the judicial process in a particular instance." (Citations, footnote, and some internal quotation marks omitted); see also State v. G & C Gulf, Inc., 442 Md. 716, 720 n.2, 114 A.3d 694, 696 n.2 (2015) ("Standing refers to whether the plaintiff has shown that he or she is entitled to invoke the judicial process in a particular instance." (Citation, brackets, and internal quotation marks omitted)). Indeed, "[o]ne requirement of justiciability is that the plaintiff have standing in the sense that the person is entitled to invoke the judicial process in a particular instance." Adams v. Manown, 328 Md. 463, 480, 615 A.2d 611, 619 (1992) (citation omitted). Put simply, "[a] litigant must have standing to maintain a judicial action." Long Green Valley

Ass'n v. Bellevale Farms, Inc., 432 Md. 292, 313, 68 A.3d 843, 855 (2013) (citation omitted).

Privity is defined as "[t]he connection or relationship between two parties, each having a legally recognized interest in the same subject matter (such as a transaction, proceeding, or piece of property); mutuality of interest[.]" Privity, Black's Law Dictionary (10th ed. 2014). Privity is required for the application of both res judicata and collateral estoppel. See Warner v. German, 100 Md. App. 512, 519-20, 642 A.2d 239, 243 (1994) ("One element [that] both [the doctrines of res judicata and collateral estoppel] share, however, is the common requirement of privity. For either doctrine to apply, the second action must be between the same parties or those in privity with them." (Citations, brackets, and internal quotation marks omitted)).

For purposes of collateral estoppel, an analysis of privity "focuses on whether the interests of the party against whom estoppel is sought were fully represented, with the same incentives, by another party in the prior matter." Mathews v. Cassidy Turley Md., Inc., 435 Md. 584, 628, 80 A.3d 269, 294 (2013) (citations omitted). In Mathews, id. at 627-28, 80 A.3d at 294, the petitioner argued that the respondent was "bound by the facts asserted in [a] bankruptcy report on the basis of collateral estoppel because" the respondent was a privy of a company that had declared bankruptcy. This Court rejected that argument and explained:

> [The petitioner] has not alleged that [the respondent] shared an identity of interests with [the company] in connection with the [company's] bankruptcy proceeding. Indeed, we do not know from the record before us what relationship [the respondent] had to the bankrupt estate—whether as a creditor or otherwise. It is not self-evident that whatever contractual

relationship existed between [the company] and [the respondent] in connection with the marketing and sale of [tenants in common] interests established the necessary identity of interests to bind [the respondent] by collateral estoppel as to determinations made in the [company's] bankruptcy proceeding.

Id. at 628, 80 A.3d at 294. Similarly, in Warner, 100 Md. App. at 520-21, 642 A.2d at 243, the Court of Special Appeals stated that an analysis of privity for purposes of collateral estoppel involves examination of "the procedural rights of the party against whom the doctrine is to be invoked[,]" and "[i]n discerning whether a party's procedural rights have been addressed adequately, a court may focus on the nature of the interests binding the two parties, and, correspondingly, whether they share the same incentive in their separate litigation attempts." (Citations omitted).

For purposes of res judicata, privity "generally involves a person so identified in interest with another that [the person] represents the same legal right." FWB Bank v. Richman, 354 Md. 472, 498, 731 A.2d 916, 930 (1999) (citation and internal quotation marks omitted). In Ugast v. La Fontaine, 189 Md. 227, 232-33, 55 A.2d 705, 708 (1947), this Court explained when nonparties in a prior lawsuit are in privity with a party in that lawsuit for purposes of res judicata, stating:

It is well established that a judgment may not be pleaded as res judicata by strangers to the action in which it was rendered, but it may be pleaded only the parties to the action and their privies. Generally, the parties to a suit are those persons who are entered as parties of record. But for the purpose of the application of the rule of res judicata, the term 'parties' includes all persons who have a direct interest in the subject matter of the suit, and have a right to control the proceedings, make defense, examine the witnesses, and appeal if an appeal lies. So, where persons, although not formal parties of record, have a direct interest in the suit, and in the advancement of their interest take open and substantial control of its prosecution, or they are so far represented by another that their interests receive actual and efficient

protection, any judgment recovered therein is conclusive upon them to the same extent as if they had been formal parties.

(Citations omitted).

## Analysis

Here, we hold that the prerequisites that must exist before judicial estoppel may be applied are not satisfied, and, as such, Judge Glass properly declined to apply judicial estoppel to bar Respondents' argument that Petitioners are in privity with First Horizon. Stated otherwise, because the three circumstances that must be fulfilled for the application of judicial estoppel are not established, Judge Glass properly ruled that Respondents' privity argument was not barred by judicial estoppel. In our view, Respondents' position with respect to privity in this case is not inconsistent with their position with respect to standing in the First Horizon litigation, as standing and privity do not give rise to mutually exclusive arguments, but instead are two separate concepts.

As to the first circumstance that must be present before judicial estoppel may be applied—that a party "takes a position that is inconsistent with a position [that it] it took in previous litigation," Dashiell, 396 Md. at 171, 913 A.2d at 22—we conclude that Respondents' positions on standing in the First Horizon litigation and privity in the current litigation are not inconsistent. Indeed, standing and privity are two distinct concepts. Standing concerns whether a "plaintiff has shown that he or she is entitled to invoke the judicial process in a particular instance[.]" State Ctr., 438 Md. at 502, 92 A.3d at 430 (citations, brackets, and internal quotation marks omitted). By contrast, privity concerns "[t]he connection or relationship between two parties, each having a legally recognized

- 38 -

interest in the same subject matter[.]" Privity, Black's Law Dictionary (10th ed. 2014). In other words, standing concerns a party's ability to bring a lawsuit, whereas privity concerns the relationship between two parties. Standing and privity are two distinct concepts, and they do not give rise to mutually exclusive arguments, such that a party may make an argument only as to standing or privity, but not as to both. A trial court's ruling that a party lacks standing does not preclude a party in a subsequent lawsuit from being in privity with the party that was found to lack standing; as such, it does not follow that, because a party lacked standing, another party in a subsequent lawsuit would be precluded from arguing that the opposing party is in privity with the party that lacked standing.

In the First Horizon litigation, Respondents' argument with respect to standing was two-fold. In large part, Respondents argued that First Horizon—the party that brought the lawsuit as lender and owner of the refinance mortgage loan—was not the proper party to bring the lawsuit because it lacked standing, as it did not own the refinance mortgage loan, and could not sue in its own name and on its own behalf for reformation of the refinance Deed of Trust. Respondents also argued that First Horizon could not maintain the litigation in its own name because, absent Schedule I of the PSA, First Horizon could not demonstrate that the PSA even applied to the refinance mortgage loan. In this litigation, Respondents have argued that Petitioners—the parties that brought the second lawsuit— are barred under res judicata and collateral estoppel from bringing the second lawsuit because they were in privity with First Horizon. Respondents contended that BNYM had the same protected, direct interest in the First Horizon litigation as First Horizon, that BNYM was First Horizon's successor-in-interest, and that Old Republic completely

controlled the prosecution of the First Horizon litigation.

Respondents' arguments on standing in the First Horizon litigation and privity in the current litigation are plainly not inconsistent. First Horizon's procedural inability to bring the First Horizon litigation in its own name and on its own behalf—*i.e.*, First Horizon's lack of standing—is of no consequence to the issue of whether there is a relationship, and ultimately privity, among First Horizon, BNYM, and Old Republic, such that BNYM and Old Republic are precluded from bringing the second lawsuit. Put simply, standing and privity are two different concepts, and Respondents' arguments on those matters are not inconsistent or otherwise contrary. Clearly, Respondents did not take a position with respect to privity in the First Horizon litigation that is contrary to the one that they are taking in this litigation. Indeed, privity was not even at issue in the First Horizon litigation because there was no litigation prior to that lawsuit. Privity, and the relationship between parties, for purposes of res judicata and collateral estoppel, obviously becomes relevant only where there are two or more lawsuits.[6]

Before addressing the other two prerequisites of judicial estoppel, we pause to consider whether Petitioners are in privity with First Horizon for purposes of res judicata

---

[6]We agree with Petitioners, however, that Respondents' positions on standing and privity are legal, not factual, positions, and that judicial estoppel is applicable where a party takes either inconsistent legal or factual positions. As discussed, standing and privity are distinct legal concepts concerning, respectively, whether a party is entitled to invoke the judicial process and whether the relationship between parties is such that res judicata and collateral estoppel may be applied. And, Maryland appellate courts have stated that judicial estoppel applies where a party took an inconsistent legal or factual position in an earlier litigation. See Lillian C. Blentlinger, 2017 WL 5507725, at *12; Dynacorp, 208 Md. App. at 472, 56 A.3d at 672; Chaney, 158 Md. App. at 39, 854 A.2d at 255.

and collateral estoppel, and we determine that they are. As to BNYM, the record demonstrates that, at the time of trial in the First Horizon litigation, First Horizon was the master servicer of the refinance mortgage loan, but BNYM both actually owned the refinance mortgage loan, and, under the PSA, was the successor-in-interest to First Horizon, which owned the refinance mortgage loan before BNYM. Indeed, both BNYM and First Horizon were parties to the PSA, and First Horizon was obligated under the PSA to service and administer the refinance mortgage loan, and to take any necessary action in connection with servicing and administering the refinance mortgage loan. BNYM thus had a direct interest in the First Horizon litigation, and its interest was adequately protected by First Horizon's prosecution of the First Horizon litigation. See Ugast, 189 Md. at 232-33, 55 A.2d at 708 ("[W]here persons, although not formal parties of record, have a direct interest in the suit, and . . . they are so far represented by another that their interests receive actual and efficient protection, any judgment recovered therein is conclusive upon them to the same extent as if they had been formal parties." (Citations omitted)). Indeed, under the circumstances set forth above, BNYM and First Horizon were "so identified in interest with [one] another" that they could be said to share "the same legal right." FWB Bank, 354 Md. at 498, 731 A.2d at 930 (citation and internal quotation marks omitted). And, given the relationship between the two entities with respect to the PSA, with certainty, BNYM's interests were "fully represented, with the same incentives, by" First Horizon in the First Horizon litigation. Mathews, 435 Md. at 628, 80 A.2d at 294 (citation omitted). In sum, BNYM is in privity with First Horizon because it had a direct interest in First Horizon litigation, it had the same interests in that case as First Horizon, and its interests

were protected by First Horizon's prosecution of litigation.

As to Old Republic, the record demonstrates that Old Republic issued the Policy insuring that the refinance mortgage loan would be secured by a first lien against the Property, and protecting First Horizon against any issues that could occur during the execution of the mortgage, and that the Policy extended to First Horizon and First Horizon's successors and/or assigns. Additionally, significantly, the record demonstrates that Old Republic controlled the prosecution of the First Horizon litigation—it selected and retained Faller to file the lawsuit; it paid Faller for costs, expenses, and attorney's fees related to the First Horizon litigation; it regularly communicated with Faller; and it discussed and approved litigation strategy, selected trial witnesses, named the plaintiff in the case as First Horizon, and decided whether to appeal the circuit court's rulings. Clearly, Old Republic and First Horizon "share[d] the same incentive in their separate litigation attempts[,]" Warner, 100 Md. App. at 521, 642 A.2d at 243 (citation omitted). And, Old Republic had "a direct interest in the [First Horizon litigation], and in the advancement of th[at] interest t[ook] open and substantial control of its prosecution[,]" Ugast, 189 Md. at 232-33, 55 A.2d at 708 (citations omitted). Like BNYM, Old Republic is in privity with First Horizon for purposes of res judicata and collateral estoppel.

Now, returning to the circumstances that must exist for judicial estoppel to be applicable, we examine the second prerequisite—that "the previous inconsistent position was accepted by a court[.]" Dashiell, 396 Md. at 171, 913 A.2d at 22 (citation omitted), and we conclude that this prerequisite is not established. To be sure, Judge Alexander certainly accepted Respondents' position on standing. Indeed, when pressed for a ruling

- 42 -

on standing, Judge Alexander ruled that First Horizon lacked standing, stating that Schedule I of the PSA was not included, that there was no identification of the refinance mortgage loan being subject to the PSA, and that First Horizon was not the owner of the refinance mortgage loan and had failed to bring the case in a representative capacity. But, bbecause Respondents' position on standing is not the same as its position on privity, the second prerequisite for the application of judicial estoppel is not established. Put simply, there was no previous inconsistent position.

Finally, there is no evidence in the record to support a conclusion that Respondents maintained inconsistent positions to intentionally mislead either Judge Alexander or Judge Glass to gain an unfair advantage. See Dashiell, id. at 171, 913 A.2d at 22 (The third circumstance that must exist for judicial estoppel to apply is that "the party who is maintaining the inconsistent positions must have intentionally misled the court in order to gain an unfair advantage." (Citation omitted)). To state the obvious, we have concluded that Respondents have not maintained inconsistent positions. In any event, in both the First Horizon litigation and this litigation, Respondents have been transparent with their arguments on standing and privity; i.e., Respondents have not attempted to hide the respective arguments as to standing or privity. The record simply does not contain any evidence of an intent to mislead Judge Glass in the current litigation, whether to gain an unfair advantage or otherwise. To that point, Judge Glass certainly never found that Respondents intended to mislead her, and, to the contrary, in actuality, ruled that Petitioners could not show that Respondents "ever intended to mislead the [c]ourt." This case's circumstances are very different from those of Kramer, 175 Md. at 463-65, 2 A.2d at 635,

in which Globe Brewing averred that Kramer was its employee at the time of the accident, thereby inducing Kramer to dismiss the tort action, and later took the position in the workers' compensation case that Kramer was not its employee at the time of the accident. In Kramer, clearly, Globe Brewing sought to gain an unfair advantage by taking directly inconsistent positions. The same simply cannot be said about the circumstances of this case.

In sum, we conclude that the three prerequisites for the application of judicial estoppel are not established, that Judge Glass did not err in declining to apply judicial estoppel given the circumstances of this case, and that Respondents were not barred from presenting their argument as to privity.

## II. Res Judicata and Collateral Estoppel

### The Parties' Contentions

Petitioners contend that Judge Alexander's ruling in the First Horizon litigation that First Horizon lacked standing is not a final judgment on the merits for purposes of res judicata or collateral estoppel, and that neither doctrine applies. Petitioners argue that Maryland courts have held that a ruling on standing is not a final judgment on the merits for purposes of res judicata or collateral estoppel. Petitioners assert that dismissal of a case on the basis of lack of standing does not have preclusive effect for purposes of either res judicata or collateral estoppel. Petitioners maintain that Judge Alexander's ruling on the merits was a contingent ruling, and not a separate and independent ruling on the merits, and, as such, the ruling on the merits was not a final judgment and has no preclusive effect.

Respondents counter that Judge Alexander's ruling on the issue of mutual mistake,

- 44 -

*i.e.*, the merits, is a final judgment that has preclusive effect for purposes of res judicata and collateral estoppel. Respondents contend that Judge Alexander's ruling on standing—specifically the ruling that First Horizon failed to prove that the PSA applied to the refinance mortgage loan—was also a final judgment on the merits of that issue, and has preclusive effect as to that issue, such that Petitioners, who are in privity with First Horizon, are barred from relitigating the issue in this case. Respondents argue that Judge Glass properly determined that Judge Alexander's rulings were alternative, and not contingent, rulings, constituted final judgments, and that both rulings have preclusive effect and bar this litigation.

In a reply brief, Petitioners contend that Judge Alexander's ruling on the merits was expressly contingent on reversal of his ruling on standing, which did not occur, and that, as such, Judge Alexander's ruling on the merits was a contingent ruling and not a final judgment that has preclusive effect.

## Standard of Review

In <u>Crise v. Md. Gen. Hosp., Inc.</u>, 212 Md. App. 492, 519-20, 69 A.3d 536, 552 (2013), the Court of Special Appeals explained that the appropriate standard of review for a trial court's decision under Maryland Rule 2-502 is as follows:

> [A trial] court decision under [Maryland] Rule 2-502, on a discrete issue that is solely within the court's province, is essentially a trial by the court on the merits of that issue. The court may hear evidence and make factual findings necessary to its decision of the discrete issue that is within its province to decide. Therefore, the court's decision on the issue is reviewed on appeal under [Maryland] Rule 8-131(c).

(Citations omitted). In turn, Maryland Rule 8-131(c) provides:

When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

We review without deference, however, questions of law, such as a determination as to the applicability of the doctrines of res judicata and collateral estoppel. See, e.g., Garrity v. Md. State Bd. of Plumbing, 447 Md. 359, 368, 135 A.3d 452, 458 (2016) ("Whether it was appropriate to grant preclusive effect[, *i.e.*, the doctrine of collateral estoppel[,] to the [Consumer Protection Division]'s Final Order . . . is a legal conclusion that this Court reviews *de novo*." (Citation omitted)); Karsenty v. Schoukroun, 406 Md. 469, 502, 959 A.2d 1147, 1166 (2008) ("The deference shown to the trial court's factual findings under the clearly erroneous standard [of Maryland Rule 8-131(c)] does not, of course, apply to legal conclusions." (Citation and internal quotation marks omitted)); Seminary Galleria, LLC v. Dulaney Valley Imp. Ass'n, Inc., 192 Md. App. 719, 734, 995 A.2d 1068, 1077 (2010) ("We agree . . . that the issue of whether *res judicata* applies to [a case] is a question of law, and that it was proper for the [trial] court—and it is appropriate for this Court—to review the legal conclusion of the Board *de novo*."); Bender v. Schwartz, 172 Md. App. 648, 664, 917 A.2d 142, 151 (2007) ("A decision under [Maryland] Rule 2-502 is a trial on the merits, with respect to the issues decided. Thus, as in all actions tried without a jury, we shall review questions of law de novo and shall not set aside the [trial] court's findings of fact unless they are clearly erroneous." (Citation and internal quotation marks omitted)).

**Law**

In Powell, 430 Md. at 63-64, 59 A.3d at 537-38, this Court described the doctrine of res judicata, or claim preclusion, as well as the circumstances that must be present for the doctrine to apply, stating:

> Res judicata is an affirmative defense that precludes the same parties from relitigating any suit based upon the same cause of action because the second suit involves a judgment that is conclusive, not only as to all matters that have been decided in the original suit, but as to all matters which with propriety could have been litigated in the first suit.
>
> In Maryland, the doctrine of res judicata precludes the relitigation of a suit if (1) the parties in the present litigation are the same or in privity with the parties to the earlier action; (2) the claim in the current action is identical to the one determined in the prior adjudication; and (3) there was a final judgment on the merits in the previous action.

(Citations and internal quotation marks omitted). In Colandrea, 361 Md. at 388, 761 A.2d at 908, we explained that, "if a proceeding between parties involves the same cause of action as a previous proceeding between the same parties, the principle of res judicata applies and all matters actually litigated or that could have been litigated are conclusive in the subsequent proceeding." (Citations omitted). Indeed,

> a judgment between the same parties and their privies is a final bar to any other suit upon the same cause of action and is conclusive, not only as to all matters decided in the original suit, but also as to matters that could have been litigated in the original suit.

Id. at 392, 761 A.2d at 910 (citations and emphasis omitted).

In Colandrea, id. at 387, 761 A.2d at 907, this Court also described collateral estoppel, or issue preclusion, stating: "[W]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the

judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." (Citations and internal quotation marks omitted). For the doctrine of collateral estoppel to apply, the following four-part test must be satisfied:

> 1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?
>
> 2. Was there a final judgment on the merits?
>
> 3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?
>
> 4. Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

Id. at 391, 761 A.2d at 909 (citation omitted). "If a proceeding between parties does not involve the same cause of action as a previous proceeding between the same parties, the principle of collateral estoppel applies, and only those facts or issues actually litigated in the previous action are conclusive in the subsequent proceeding." Id. at 388, 761 A.2d at 908 (citations omitted). Thus, when collateral estoppel applies, "facts or issues decided in the previous action are conclusive only if identical to facts or issues presented in the subsequent proceeding." Id. at 388-89, 761 A.2d at 908 (citation omitted). Stated otherwise, "collateral estoppel may be invoked when in a second suit between the same parties, even if the cause of action is different, any determination of fact that was actually litigated and was essential to a valid and final judgment is conclusive." Shader v. Hampton Imp. Ass'n, Inc., 443 Md. 148, 161-62, 115 A.3d 185, 193 (2015) (citation, emphasis, and internal quotation marks omitted).

Generally speaking, for a trial court's ruling to constitute a final judgment, the ruling "must, among other things, be an unqualified, final disposition of the matter in controversy." Addison v. Lochearn Nursing Home, LLC, 411 Md. 251, 262, 983 A.2d 138, 145 (2009) (citation and internal quotation marks omitted). In FWB Bank, 354 Md. at 492-93, 731 A.2d at 927-28, we elaborated on what constitutes a final judgment for purposes of res judicata, explaining:

> The basic rule of claim preclusion in this context is not difficult: "A valid and final personal judgment rendered in favor of the defendant bars another action by the plaintiff on the same claim." RESTATEMENT (SECOND) OF JUDGMENTS § 19 (1982). . . .
>
> When an earlier court has actually ruled on the matter sought to be litigated in a second court, the "same claim" analysis is usually straightforward. . . . It has long been established that a judgment between the same parties or their privies upon the same cause of action is conclusive not only as to all matters that have been decided in the original suit, but as to all matters which with propriety could have been litigated in the first suit. In dealing with that issue, we have adopted the "transactional" approach set forth in § 24 of the RESTATEMENT (SECOND) OF JUDGMENTS: "When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar . . . the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." In deciding whether a factual grouping constitutes a "transaction," the RESTATEMENT directs a pragmatic approach, "giving weight to such considerations as whether the facts are related in time, space, origin or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." RESTATEMENT, *supra*, § 24(2).

(Some citations and internal quotation marks omitted) (last ellipsis in original).

**Analysis**

Here, we hold that Judge Alexander's rulings on the merits and standing in the First

Horizon litigation were not contingent rulings, but rather were independent, alternative rulings, and, as such, the ruling on the merits constitutes a final judgment for purposes of res judicata and collateral estoppel. We conclude that Judge Glass properly determined that all of the elements of res judicata and collateral estoppel were satisfied, including the final judgment element, and, thus, Petitioners were barred from bringing the claims in the second lawsuit. Stated otherwise, the prerequisites for application of res judicata and collateral estoppel have been established, and Judge Alexander's ruling on the merits has preclusive effect in the second lawsuit.

As an initial matter, we note that, on brief in this Court, Petitioners focus on the final judgment element of res judicata and collateral estoppel. In other words, Petitioners do not appear to take issue with Judge Glass's determination that the other elements of res judicata and collateral estoppel are satisfied. Thus, we, too, focus on the final judgment element. As explained, for both res judicata or collateral estoppel to apply, there must be a final judgment on the merits. See Powell, 430 Md. at 63-64, 59 A.3d at 538 ("In Maryland, the doctrine of res judicata precludes the relitigation of a suit if . . . (3) there was a final judgment on the merits in the previous action." (Citation omitted)); Colandrea, 361 Md. at 391, 761 A.2d at 909 (For collateral estoppel to apply, one part of a four-part test that must be satisfied is the existence of "a final judgment on the merits[.]" (Citation omitted)).

As stated, we hold that Judge Alexander's ruling on the merits of the First Horizon litigation was an independent, alternative ruling that constitutes a final judgment for purposes of res judicata and collateral estoppel; *i.e.*, the ruling on the merits was not a

contingent ruling having no force or effect. Our determination is supported by the record, which reveals the following case-specific, unique sequence of events in the First Horizon litigation. At the start of trial, Judge Alexander denied Respondents' motion to dismiss the amended complaint, but struck the correction to caption, treating it as a motion to amend or substitute the plaintiff. Respondents' counsel moved to dismiss the case or, in the alternative, for summary judgment, on the ground that First Horizon lacked standing. Judge Alexander reserved ruling on the motion for summary judgment, and allowed the case to proceed to trial. On the second day of trial, Judge Alexander heard argument as to the admissibility of the PSA, and Respondents' counsel argued that First Horizon lacked of standing. In relevant part, First Horizon's counsel responded that First Horizon was authorized to bring the action in its own name, and stated that he hoped that Judge Alexander "would be inclined to try to resolve this case on its merits." Judge Alexander ultimately admitted the PSA into evidence.

First Horizon rested and Respondents' counsel orally moved for judgment, arguing that First Horizon lacked standing, and had failed to produce evidence demonstrating a mistake of fact by Susan. After hearing argument from the parties, Judge Alexander granted the motion for judgment based on the merits of the case, not a lack of standing. Specifically, Judge Alexander ruled that First Horizon had failed to produce evidence showing a mutual mistake of fact.

Although the First Horizon litigation could have concluded at that time, First Horizon's counsel asked Judge Alexander to clarify, in relevant part, whether Judge Alexander found "that there was sufficient standing established to allow th[e] case to be

heard on the merits[.]"  In response, Judge Alexander ruled that First Horizon lacked standing.  First Horizon's counsel responded that if First Horizon lacked standing, "then there is no ability to go forward on any claims" and "there is no case to go forward."  At that point, Respondents' counsel suggested that Judge Alexander issue alternative rulings as to the merits and standing.

Significantly, Respondents' counsel made the following suggestion to Judge Alexander:

> Grant the motion for judgment because you have heard the evidence, you have considered the merits and the rulings on the merits are in the alternative. So even if they had standing, because that way the issue would be ripe so that the [circuit c]ourt's efforts in this court in hearing what they have asked you to hear, if the [circuit c]ourt were to review it, they can consider all of the issues.

And after Judge Alexander asked Respondents' counsel whether he had an objection to a ruling that there was standing, Respondents' counsel replied:

> No, I actually say in the alternative.  So you can have the ruling that if the [circuit c]ourt could say even if there was standing, I have considered the presentation of evidence as if there was standing to, for judicial economy, so that we don't have to have a whole new trial.

Without objection from First Horizon's counsel to the request that alternative rulings should be issued to avoid "a whole new trial[,]" Judge Alexander accepted that suggestion and orally issued alternative rulings on standing and the merits, stating: "That sounds appropriate.  I will say that I do not find that they had standing, however, in the alternative, I do not find that [First Horizon] has met its burden of production to have the case go forward based on the evidence for the reasons previously stated."  The trial recessed immediately thereafter.  Later, consistent with his oral ruling, Judge Alexander issued an

order granting judgment in Respondents' favor, stating, in relevant part,

> Trial having taken place in this matter on April [23 and] 24, 2012, [First Horizon] having concluded the presentation of its case, this Court finds that [First Horizon] does not have standing to bring th[e] action against [Respondent]s. In the alternative, this Court finds that even if [First Horizon] had standing to pursue th[e] action, the evidence which [First Horizon] presented was insufficient to meet its burden of production.

The record unmistakably demonstrates that Judge Alexander's ruling on the merits of the case was the initial ruling, that the ruling on standing followed, and that the two rulings were then reiterated and expressed as "alternative" rulings in response to a request that the rulings be issued as such to avoid the need for a new trial. Judge Alexander's ruling on the merits, in which he found that First Horizon had not produced evidence showing that Susan had made a mistake of fact, was made after First Horizon presented its case-in-chief and rested, after Respondents' counsel moved for judgment on both standing and the merits, and before any request for a ruling on standing, and, thus, clearly was not contingent on his later ruling on standing. Indeed, it is evident from the trial transcript that the ruling on the merits was intended to be a final judgment on the merits, both at the time that Judge Alexander initially issued the ruling without addressing standing, and at the time that Judge Alexander reiterated the ruling in response to Respondents' counsel's request for a ruling "so that we don't have to have a whole new trial." Notably, it was only after being prompted by First Horizon's counsel that Judge Alexander issued a ruling on standing. Moreover, when Judge Alexander reiterated the two rulings, both orally and in a later-issued order, the two rulings were expressed said to be "alternative" rulings, not contingent rulings. The sequence of the rulings in the First Horizon litigation and Judge

Alexander's discussion with counsel demonstrates that the ruling on the merits was intended to be an independent, alternative ruling that constitutes a final judgment for purposes of res judicata and collateral estoppel.[7]

Given the sequence of events that occurred with respect to the issuance of the rulings in the First Horizon litigation, we find unpersuasive federal case law stating that dismissal of a case on the basis of lack of standing does not have preclusive effect for res judicata or collateral estoppel. To be sure, Petitioners are correct that federal case law supports the conclusion that dismissal of a case for lack of standing or on other jurisdictional grounds is not a final judgment for purposes of res judicata or collateral estoppel. See, e.g., Perry v. Sheahan, 222 F.3d 309, 318 (7th Cir. 2000) ("A judgment on the merits precludes relitigation of any ground within the compass of the suit, while a jurisdictional dismissal precludes only relitigation of the ground of that dismissal[.] . . . The determination that Perry lacked standing in [the first lawsuit] precludes relitigation of the same standing argument in [the second lawsuit]." (Citation, brackets, and internal quotation marks omitted)); Gillig v. Nike, Inc., 602 F.3d 1354, 1361 (Fed. Cir. 2010) ("To the extent that the dismissal in the original action was for lack of standing, there is no res judicata bar to a second action by a party with proper standing, but only a bar to another action by the same party alleging the same basis for standing[.]" (Citation omitted)).

---

[7]At oral argument, Petitioners' counsel argued that, once Judge Alexander ruled on standing, the ruling on the merits could have no force or effect. In our view, however, this argument misses the mark because it glosses over the circumstances that the ruling on the merits was the initial ruling and that the ruling on the merits was an independent ruling intended to be a final judgment.

However, Petitioners fail to account for the circumstance that this case does not involve a ruling on standing alone, or even a primary ruling on standing with a secondary or contingent ruling on the merits. As the record demonstrates, here, Judge Alexander's primary ruling was as to the merits of the case; it was a decisive and comprehensive ruling addressing the heart of the merits—*i.e.*, lack of mutual mistake—and the case could have ended at that point. So, although federal case law indicates that, once a case is dismissed for lack of standing, then litigation of the action by a party with standing is not barred, that case law is not persuasive under the circumstances of this case, in which the record reflects that Judge Alexander's ruling on the merits when issued was intended to be the final ruling with respect to the case.

Similarly, we are not convinced that the Restatement (Second) of Judgments § 20 (1982) leads to a different result. Restatement (Second) of Judgments § 20 provides:

> (1) A personal judgment for the defendant, although valid and final, does not bar another action by the plaintiff on the same claim:
>
> (a) When the judgment is one of dismissal for lack of jurisdiction, for improper venue, or for nonjoinder or misjoinder of parties;
> (b) When the plaintiff agrees to or elects a nonsuit (or voluntary dismissal) without prejudice or the court directs that the plaintiff be nonsuited (or that the action be otherwise dismissed) without prejudice; or
> (c) When by statute or rule of court the judgment does not operate as a bar to another action on the same claim, or does not so operate unless the court specifies, and no such specification is made.
>
> (2) A valid and final personal judgment for the defendant, which rests on the prematurity of the action or on the plaintiff's failure to satisfy a precondition to suit, does not bar another action by the plaintiff instituted after the claim has matured, or the precondition has been satisfied, unless a second action is precluded by operation of the substantive law.

Comment e, concerning "Alternative determinations," provides, in pertinent part:

A dismissal may be based on two or more determinations, each of which, standing alone, would render the judgment a bar to another action on the same claim. In such a case the judgment operates as a bar. . . .

A dismissal may be based on two or more determinations, at least one of which, standing alone, would not render the judgment a bar to another action on the same claim. In such a case, if the judgment is one rendered by a court of first instance, it should not operate as a bar.

Notably, the Restatement (Second) of Judgments § 20 does not address the circumstance of a trial court ruling on a motion for judgment at the conclusion of the evidence in a plaintiff's case, which is the circumstance here. Nor does the Restatement specifically mention dismissal for lack of standing. Rather, the Restatement refers to dismissal for lack of jurisdiction, improper venue, lack of joinder and improper joinder, and a dismissal for plaintiff's failure to satisfy preconditions that may later be satisfied. The Restatement concerns circumstances where a trial court rules on a motion to dismiss, not where a trial court conducts a trial with respect to the merits of the case and rules on a motion for judgment at the conclusion of the plaintiff's case after hearing evidence. The Restatement does not establish that, where a trial court rules on a motion for judgment at the conclusion of the plaintiff's evidence, and later issues a ruling as to the plaintiff's standing, those rulings must be automatically contingent on one another, such that a ruling on the merits cannot have preclusive effect. Stated otherwise, nothing in the Restatement addresses whether a ruling on the merits after a trial court hears evidence in a case acts as a bar to another action on the same claim where a trial court also later rules on standing; instead, the Restatement (Second) of Judgments § 20 focuses on whether final judgments in the form of dismissals act as a bar to future actions by the plaintiff on the same claim.

Likewise, Petitioners' reliance on <u>Tower Oaks Blvd., LLC v. Procida</u>, 219 Md. App. 376, 100 A.3d 1255 (2014), <u>cert. dismissed</u>, 444 Md. 691, 121 A.3d 820 (2015), for the contention that a contingent ruling is not a separate and independent ruling on the merits and thus has no preclusive effect is misplaced. In <u>Tower Oaks</u>, 219 Md. App. at 392, 100 A.3d at 1265, in addressing a motion to dismiss the appeal for mootness, the Court of Special Appeals determined that a trial court's rulings in denying a motion to stay and dismiss were contingent rulings, not separate and independent rulings. In that case, the trial court denied the motion on the ground that the appellant "had not been authorized to take action to defend itself in the second foreclosure action, making the motion to stay and dismiss ineffective." <u>Id.</u> at 392, 100 A.3d at 1265. The trial court "then went on to address the merits of the motion to stay and dismiss, opining that if the motion to stay and dismiss had been authorized, the wrongful conduct [of another entity] . . . would not eliminate [that entity's] right to foreclose, as a matter of law or under the unclean hands doctrine." <u>Id.</u> at 392, 100 A.3d at 1265 (emphasis omitted). The Court of Special Appeals determined that the rulings were not separate and independent, explaining:

> The court's "ruling" about the merits of the motion to stay and dismiss was not a separate and independent basis on which it denied the motion. At most, it was a contingent ruling. The court found that [the appellant] filed an unauthorized and therefore ineffective motion to stay and dismiss; the consequence of that finding is that any "ruling" on the merits of the motion is immaterial. It is not a separate basis for denying the motion, independent of the lack of authority ruling. . . . In neither situation are the two rulings separate and independent and in neither situation has there ceased to be a live controversy between the parties so that the case has become moot.

<u>Id.</u> at 392-93, 100 A.3d at 1265.

Tower Oaks is distinguishable from this case in obvious respects. Significantly,

Tower Oaks did not involve res judicata or collateral estoppel, let alone what constitutes a final judgment for purposes of those doctrines. Nor did the case involve a motion for judgment made at the end of a party's case-in-chief. Thus, Tower Oaks provides no guidance in determining whether Judge Alexander's ruling on the merits is a final judgment on the merits that has preclusive effect.[8]

In sum, under the distinctive circumstances of this case, we conclude that Judge Alexander's ruling as to the merits in the First Horizon litigation constitutes a final judgment on the merits for purposes of res judicata and collateral estoppel. Although Petitioners do not appear to take issue with the determination that the other elements of res judicata and collateral estoppel are satisfied, we shall nevertheless briefly address these elements. In doing so, we conclude that all of the elements of res judicata and collateral estoppel are established. To reiterate, the following three circumstances must be present for the doctrine of res judicata to apply:

> (1) the parties in the present litigation are the same or in privity with the parties to the earlier action; (2) the claim in the current action is identical to the one determined in the prior adjudication; and (3) there was a final judgment on the merits in the previous action.

---

[8]We also conclude that Petitioners' reliance on Ullery v. Fulleton, 256 P.3d 406, 409 (Wash. Ct. App. 2011) is without merit because, in that case, the trial court ruled that a party lacked standing to sue, and then "noted" that, even if he had had standing, he had failed to produce "sufficient evidence" as to the merits of the breach of contract claim. In Ullery, id. at 411-12, the Court of Appeals of Washington stated that, "[h]aving found that [the party] lacked standing, the trial court should not have proceeded to the merits[,]" and that "prudential considerations of justiciability prevent a judgment of dismissal based on lack of standing from constituting a judgment on the merits." In contrast to the order of the rulings in Ullery, in the First Horizon litigation, Judge Alexander ruled decisively on the merits, and ruled on standing only when prompted to do so.

Powell, 430 Md. at 63-64, 59 A.3d at 538 (citations omitted). As to the first and third circumstances, as we have explained, Petitioners are in privity with First Horizon and there was a final judgment on the merits in the First Horizon litigation.

As to the second circumstance that is necessary for the application of res judicata, in Colandrea, 361 Md. at 388, 761 A.2d at 908, we explained that, "if a proceeding between parties involves the same cause of action as a previous proceeding between the same parties, the principle of res judicata applies and all matters actually litigated or that could have been litigated are conclusive in the subsequent proceeding." (Citations omitted). Here, the record unequivocally demonstrates that the claims, or causes of action, in this case are identical to the claims, or causes of actions, that were determined in the First Horizon litigation. In the First Horizon litigation, in an amended complaint, First Horizon sought reformation of the refinance Deed of Trust, a declaration that First Horizon had a valid first mortgage lien against the Property, an order directing Susan to execute a confirmatory joinder of the refinance Deed of Trust, a declaration that First Horizon had a mortgage lien through equitable subrogation on the Property, and an order establishing an equitable mortgage against the Property under the refinance Deed of Trust. In the second lawsuit, Petitioners raised identical causes of action for reformation of the refinance Deed of Trust, an order compelling Respondents to "execute appropriate paperwork, or alternatively reforming the existing refinance [D]eed of [T]rust[,]" equitable subrogation, and an equitable mortgage. And, significantly, the second lawsuit was based on the same facts and legal grounds as the First Horizon litigation—namely, that First Horizon and Susan had made a mutual mistake in failing to include Susan on the refinance Deed of

Trust. Because the second lawsuit involves the same causes of action as in the First Horizon litigation between the same parties or their privies, a final judgment on the merits "is conclusive, not only as to all matters decided in the [First Horizon litigation], but also as to matters that could have been litigated in the [First Horizon litigation]." Id. at 392, 761 A.2d at 910 (citations and emphasis omitted).[9]

Similarly, for the doctrine of collateral estoppel to apply, the following four-part test must be satisfied:

1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?

2. Was there a final judgment on the merits?

3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?

4. Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

Colandrea, 361 Md. at 391, 761 A.2d at 909 (citation omitted). As to the second and third circumstances, for the reasons explained above, there was a final judgment on the merits in the First Horizon litigation, and Petitioners are in privity with First Horizon.

As to the first circumstance necessary for application of collateral estoppel, the record demonstrates that the issue of mutual mistake of fact was "actually litigated and determined by a valid and final judgment," and that that "determination is conclusive in" the second lawsuit. Id. at 387, 761 A.2d at 907 (citations and internal quotation marks

---

[9]Thus, any other causes of action that were added by Petitioners in the second lawsuit based on the same set of facts would necessarily be barred by application of res judicata, as the causes of action could have been brought in the First Horizon litigation.

omitted).  Stated differently, the issue decided in the First Horizon litigation—*i.e.*, whether there was a mutual mistake of fact in failing to have Susan sign the refinance Deed of Trust, and, specifically, whether Susan had the requisite knowledge and intent with respect to the execution of the refinance Deed of Trust—is identical to the issue that was presented in the second lawsuit brought by Petitioners.  Finally, as to the fourth prerequisite for application of collateral estoppel, Petitioners had a full and  fair opportunity to be heard in the First Horizon litigation through their privy, First Horizon; indeed, in the First Horizon litigation, First Horizon presented its entire case-in-chief, presenting witness testimony and introducing exhibits into evidence.  Accordingly, all four circumstances necessary for the application of collateral estoppel have been established.

Because all of the elements of res judicata and collateral estoppel are satisfied, we conclude that Judge Glass correctly determined that, under the circumstances of this case, the two doctrines applied, and Petitioners were precluded from bringing the second lawsuit containing causes of action and issues identical to those that were brought and litigated, or that could have been litigated, in the First Horizon litigation.  Accordingly, Judge Glass's judgment was properly affirmed by the Court of Special Appeals, whose judgment we, in turn, affirm.

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONERS TO PAY COSTS.**